No. 46,183

E. J. and PATTY COUGHLIN, WALTER E. and VERA DEBOARD, RAY D. EWERS, G. W. HALLIDAY, VINCENT C. JR. and HARRIETT HALPIN, DR. JAMES E. and NORITA HASSELLE, MAURICE E. and JOAN HOCHARD, KATHERINE LUND, DR. WILLIAM and MARY JANE NICE, LOUISE L. O'NEIL, LYLE E. and HELEN T. PEARSON and DR. WILLIAM S. and ELEANOR E. SIMPSON, *Appellees*, v. THE CITY OF TOPEKA, a Municipal Corporation, the MAYOR and BOARD OF COMMISSIONERS OF THE CITY OF TOPEKA, KANSAS and JACK C. McCARTER, *Appellants*.

(480 P. 2d 91)

Opinion filed January 23, 1971.

*Robert Ochs*, of Topeka, argued the cause and *Charles S. Fisher, Jr., James E. Benfer* and *Bruce C. Harrington*, Assistant City Attorney, all of Topeka, were with him on the brief for appellants.

*John E. Wilkinson*, of Topeka, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: The city governing body of Topeka rezoned a portion of one block of a residential area lying south of Eighth street and between Buchanan street on the east and Lincoln street on the west to accommodate construction of a medical office facility which could eventually take care of fourteen doctors.

A group of homeowners near the area brought an action under K. S. A. 12-712 to test the reasonableness of the rezoning ordinance. The district court after hearing the evidence found the action of the governing body of the city and the ordinance to be unreasonable and entered an order enjoining the city from publishing and enforcing the ordinance.

The city and the developer have appealed.

The rules of law which govern this type of proceeding have been

set forth and discussed in many of our recent decisions including *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513; *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213; *Keeney v. City of Overland Park,* 203 Kan. 389, 454 P. 2d 456 and *Waterstradt v. Board of Commissioners,* 203 Kan. 317, 454 P. 2d 445.)

In *Bodine* and *Keeney* it was pointed out that in determining reasonableness the trial court may not substitute its judgment for that of the governing body and should not declare the action of the governing body unreasonable unless clearly compelled to do so by the evidence. The presumption exists that the governing body acted reasonably, and it is incumbent upon those attacking its action to show the unreasonableness thereof.

In *Bodine* and *Arkenberg* it was declared that a comprehensive zoning plan prepared and recommended by the planning commission, as contemplated in K. S. A. 1965 Supp. 12-708, does not obligate the governing body of the city to zone property in accordance with the plan.

In *Arkenberg* and *Waterstradt* it was held that zoning is not to be based upon a plebiscite of the neighbors, although their interests are to be considered, for the final decision of the governing body should be governed by a basic consideration of the benefit or harm involved to the community at large.

In determining reasonableness or lack of it in zoning cases our court has indicated that action which is capricious, arbitrary or oppressive is unreasonable in the sense that term is used in K. S. A. 12-712. When the action of the city governing body in rezoning an established residential area is taken without regard to the benefit or harm involved to the community at large and is so wide of the mark as to be outside the realm of fair debate the action of the governing body and the ordinance are unreasonable.

At the trial the homeowners introduced the testimony of Leland R. Edmonds, associate professor of planning at Kansas State University. He has impressive credentials in the field of city and area planning. He testified extensively concerning this neighborhood, the comprehensive land use plan of the city recommended by the planning commission and the five year neighborhood analysis of this area. There was testimony from various homeowners which indicated that, although the houses in the area were from 40 to 60 years old, several of the homes had been purchased during the

past seven years at substantial prices (from $25,000 to $32,500) for residential purposes.

The district court made the following findings of fact and conclusions of law:

"1. An application for Amendment to the District Zoning Map was filed by the defendant, Jack C. McCarter, with the Topeka-Shawnee County metropolitan planning agencies (herein referred to as the Planning Commission) on February 26, 1969, and was given No. Z 69-24.

"2. The application requested a change of the district zoning classification from "C" two-family dwelling to "E" multiple-dwelling district.

"3. The present use of the property in question is residential and the desired use was medical building. The properties in question are located at 812 and 816 Lincoln Street and 825 Buchanan Street, Topeka, Shawnee County, Kansas.

"4. The intended use of the property is a medical facility and off-street parking area as shown in Joint Exhibit 1-A. The proposed facility will provide for approximately 12 to 14 doctors' offices, a retail pharmacy, a snack bar and parking for 82 vehicles.

"5. The existing zoning and use of area is as follows:

EXISTING ZONING AND USE OF AREA

| | Zoning | Use |
|---|---|---|
| North: | "E" Multiple and "C" two Family | Dwelling and Vacant |
| South: | "C" Two Family | Single Family & Two Family Dwellings |
| East: | "C" Two Family | Single Family & Two Family Dwellings |
| West: | "C" Two Family | Single Family & Two Family Dwellings |

"6. On March 21, 1969 at public hearing before the Planning Commission the application was disapproved (3-4-0).

"7. On May 6, 1969 the City Commission voted to approve the application.

"8. On May 8, 1969 the City Clerk referred the application back to the Planning Commission as provided for in KSA 12-708 as amended with a request that the Planning Commission reconsider the petition. The basis of approval by the City Commission was that the property in question would be put to the highest and best use.

"9. On May 16, 1969 the Planning Commission unanimously voted to reaffirm their previous decision to disapprove the application by a vote of 7-0 for disapproval.

"10. On July 8, 1969 the City Commission voted approval of the application by a vote of 4-1. By Ordinance No. 12763, amending the "District Map" of zoning ordinance section 30-502 of the Code of Revised Ordinances of 1963, a zoning change was made from "C" two-family dwelling to "E" multiple dwelling on the subject properties.

"11. Under K. S. A. 12-701 et seq., the legislature intended that a general plan for the development of a city be adopted by creation of a planning commission. The commission acts as an advisory body to the city commission.

"12. Under K. S. A. 12-704 the Plan shall constitute the basis for guide

for public action to insure a coordinated and harmonious development or re-development which will best promote the health, safety and morals, order, convenience, prosperity and general welfare. The Plan is a guide for the city commission.

"13. There are 54 children in the immediate area; that the area was not de-teriorating but on the contrary, the properties have been improved by the owners; that the proposed change would destroy the character of the neigh-borhood which is a residential area of single and two-family dwellings pre-dominately; that the traffic problems would endanger the children and further cause traffic congestion.

"14. That 84% of the homes on Buchanan Street between 8th Street and 10th Street are owner-occupied, and 73% of the homes on Lincoln Street between 8th and 10th Streets are owner-occupied. Further that the Hasselle home would be surrounded on three sides by "E" multiple, the existing "E" multiple on the north and the proposed zoning on the south and west. Further the Halpin home and the Hasselle home would have a 65-car parking lot located between their homes.

"15. On Buchanan Street between 8th and 10th Streets there are seven homes on the west side, six of which are single-family owner-occupied and one multiple dwelling rental. On the east side there are 12 homes, of which 10 are owner-occupied (seven single-family) and two rental dwellings. On Lincoln Street between 8th and 9th Streets there are 17 homes, of which 11 are single-family owner-occupied, five rental dwellings and one empty.

"16. The proposed change in the District Zoning Map from "C" to "E" was not based on the Preliminary Land Use, (Comprehensive Land Use) Plan of the City of Topeka.

"17. The area proposed to be changed is not in the particular area de-signated for medical facilities in the Preliminary Land Use Plan; and further, the proposed change would not improve the living area; the living areas would not be reasonably protected from through traffic.

"18. The proposed zoning change constitutes an incompatible land use in that the intense traffic of medical facilities is not compatible with living areas because of constant movement of traffic which under such circumstances, would create a generally unsatisfactory living environment.

"19. The proposed zoning is detrimental to the neighboring property owners in that such would constitute a spot zoning, which would create an instability of property values in that people tend to seek the opportunity to sell their properties when such zoning was allowed and people tended to cease to pay for the maintenance of property when such zoning was permitted, and thus the zoning would precipitate a significant deterioration of the entire area.

"20. The medical facility as proposed and the community as a whole would be better served if the said facility were placed in the particular area designated in the Land Use Plan.

"21. The basis for approval of the application by the City Commission was that the subject properties would be used to the highest and best use of the land. This theory is only one criteria to be considered among others, and those are that the use of said property has to relate to the objectives and the

principle of the Plan and that in fact the proposed zoning should follow the basic principles or guidelines laid out in the Land Use Plan.

"22. The area in question is designated as the Clay Neighborhood as particularly designated in Neighborhood Analysis. In this neighborhood in the year 1960 6.1% of the homes were listed as deteriorated and 1% of the homes were listed as dilapidated. In 1965, 5.2% of the homes were listed as deteriorated and .9% of 1% of the homes were listed as dilapidated.

"23. The Neighborhood Analysis indicates that there are 160 neighborhoods in the metropolitan area and that 61 different elements were considered. Points were given for rating the various elements and that it was possible to receive 3500 points. The Clay neighborhood received 2,000, or 57% of the total possible, and that it had received a final overall rank of 21 out of 160 neighborhoods.

### "CONCLUSION OF LAW

"1. The action of the governing body of the City of Topeka was unreasonable.

"It is the judgment of the Court that the plaintiffs have sustained the burden of proof and that the action of the City of Topeka in granting a change of zoning from "C" two-family dwelling to "E" multiple dwelling on the properties located at 812 and 816 Lincoln and 825 Buchanan Streets, Topeka, Shawnee County, Kansas is unreasonable. It is the further judgment of the Court that the City of Topeka and its agencies be and are hereby enjoined from publishing and/or enforcing the ordinance herein granting said change."

We have studied the record before us and are convinced the court's findings are adequately supported by a preponderance of the evidence. We are further convinced that these findings compel the court's conclusion that the action of the governing body of the city of Topeka in rezoning this small residential area was unreasonable.

None of the city commissioners testified at the trial. The only testimony in support of the rezoning was by Robert Lee who is a real estate broker engaged in the appraisal and investment business in the city of Topeka. His testimony was largely directed toward establishing that the rezoning was justified because it would result in permitting the highest and best use of this residential area. "Highest and best use" is only one of the criteria to be considered. If this were the only criteria no residential district could withstand an attempt to rezone for commercial purposes.

In addition to medical office facilities, "E" multiple zoning permits the following additional uses: radio broadcasting studios; banks; savings and loan businesses; business or commercial schools; dancing or music academies; office buildings; insurance offices; psychiatric, surgical and diagnostic clinics and analytical research and testing laboratories.

The appellants contend the court erroneously assumed that the city was bound by the comprehensive land use plan recommended by the planning commission. Such a plan does not obligate or bind the city. (See *Bodine v. City of Overland Park,* supra, and *Arkenberg v. City of Topeka,* supra.)

A city is not unalterably bound by a comprehensive land use plan. This is true whether the plan is merely recommended to the city or adopted by ordinance. The city must be free to deviate from such a plan when the essential nature of a neighborhood changes substantially. (See *Arkenberg v. City of Topeka,* supra.) It is inherent in the purpose and philosophy behind zoning regulations that the governing body remain free to act in the best interests of the community at large. However, a planning commission does act in an advisory capacity to the city governing body, and their recommendations on a comprehensive land use plan as well as their disapproval of zoning changes are entitled to some weight and consideration by the city governing body. As we read and interpret the trial court's findings and its memorandum opinion it did not assume that the city was unalterably bound by the comprehensive land use plan or by the planning commission's disapproval in this zoning change.

The appellants further complain of the trial court's finding 19 that the ordinance would constitute "spot zoning".

"Spot zoning" is a descriptive term rather than a legal term and spot zoning as such is not necessarily invalid. Its validity depends upon the facts and circumstances appearing in each case. (*Bucholz v. City of Omaha,* 174 Nebr. 862, 120 N. W. 2d 270.) "Spot zoning" generally refers to the singling out of a small parcel of land for use classified differently from the surrounding area, primarily for the benefit of the owner of the property so zoned and to the detriment of the area and other owners therein. In such a case the zoning may be declared unreasonable and invalid.

In 8 McQuillin Mun. Corp. (3rd Ed.), Zoning, § 25.83 it is said:

"Although not denounced by any hard and fast rule, zoning in a haphazard manner is not favored and, on the contrary, zoning should proceed in accordance with a definite and reasonable policy. Thus, a zoning ordinance or an amendment of a zoning ordinance to permit piecemeal or haphazard zoning is void, and so-called 'spot zoning,' where it is without a reasonable basis, is invalid. The legislative intention in authorizing comprehensive zoning is reasonable uniformity within districts having in fact the same general characteristics and not the marking off, for peculiar uses or restrictions of small

districts essentially similar to the general area in which they are situated. . . . Thus, singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot' zoning. . . ."

In *Cassel v. City of Baltimore*, 195 Md. 348, 73 A. 2d 486 it was stated:

" 'Spot zoning,' the arbitrary and unreasonable devotion of a small area within a zoning district to a use which is inconsistent with the use to which the rest of the district is restricted, has appeared in many cities in America as the result of pressure put upon councilmen to pass amendments to zoning ordinances solely for the benefit of private interests. While the City Council has wide discretion in enacting zoning ordinances, it has no authority to place restrictions on one persons's property and by mere favor remove such restrictions from another's property, unless there is reasonable ground for the discrimination. . . ." (p. 355.)

Considering the relevant findings of fact made by the trial court we believe that the proposed ordinance would have devoted a portion of one block in this residential area to a use inconsistent with the use to which the rest of the district is restricted and would have constituted not only spot zoning but also arbitrary and unreasonable spot zoning.

Some question has been raised concerning the testimony of a witness who testified concerning the ownership and occupancy of three of the houses located in this general area. Assuming without deciding that this testimony was hearsay and should not have been admitted we cannot say prejudicial error was committed in view of the other evidence in the record supporting the trial court's conclusions. It does not affirmatively appear to have prejudicially affected the substantial rights of the appellants. (See K. S. A. 60-2105.)

Judgment is affirmed.

SCHROEDER, J., not participating.