No. 46,892

S. R. Hukle and Robert L. Hughes, *Appellees,* v. City of Kansas City, Kansas, A Municipal Corporation, *Defendant,* and Argentine Action Group, by and through William E. Braden, Clifford Hackleman and John Russell, (Intervenor) *Appellant.*

(512 P. 2d 457)

Opinion filed July 14, 1973.

*John H. Fields,* of Carson, Mahoney and Fields, of Kansas City, argued the cause and was on the brief for the appellant.

*Edward H. Powers,* of Kansas City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HARMON, C.: This is a zoning controversy. Challenged here is the propriety of a district court order finding that the refusal of the city of Kansas City, Kansas, to rezone a tract of land was unreasonable and arbitrary and directing the rezoning applied for.

The appeal is by a group of people, known as the Argentine Action Group, who own land adjoining or close to the tract sought to be rezoned and who oppose the requested rezoning. The group twice sought, unsuccessfully, a district court order permitting them to intervene in the proceedings. A threshold question is presented

whether it has any right to prosecute this appeal and test the district court rezoning order on its merits.

The facts essential to an understanding of the intervention issue are not in dispute.

The owners of the tract sought to be rezoned, S. R. Hukle and Robert L. Hughes, appellees herein, filed their application for rezoning with the city. The planning commission recommended that the proposed rezoning be denied and the board of city commissioners denied it. The landowners then brought the proceeding to the district court of Wyandotte county for review pursuant to K. S. A. 12-712. There the refusal to rezone was defended by the city attorney on behalf of the city. At this point the dates of further events become significant.

October 20, 1971, the trial court found the city's refusal to rezone was unreasonable and arbitrary.

October 26, 1971, the city filed a motion for new trial.

November 3, 1971, the Argentine group, appellant herein, filed its first motion to intervene in the action.

December 10, 1971, both the foregoing motions were overruled.

December 30, 1971, the city filed notice of appeal to this court. The same day the Argentine group filed notice of appeal from the order denying its motion to intervene.

Thereafter the parties secured extensions of time and pursuant thereto made timely filings of designation of record, statement of points and additional designation of record.

June 21, 1972, the city filed a motion to dismiss its appeal (up to this point it appears the Argentine group had been assisting the city attorney in the processing of the appeal).

June 22, 1972, the Argentine group filed a second motion to intervene and asked for a reasonable extension of time within which to file the record on appeal which was due to be filed in this court on June 30, 1972.

July 28, 1972, the trial court denied the Argentine group's motion to interevene and dismissed the appeal.

August 25, 1972, the Argentine group filed notice of appeal from the order denying its second motion to intervene.

September 13, 1972, upon the application of the Argentine group this court reinstated the appeal, its consideration on the merits to be contingent on the group's right to intervene in the proceeding. All appeals were consolidated.

Appellant Argentine Action Group first contends the trial court

erred in denying its first motion to intervene. In *Rawlins v. Stanley*, 207 Kan. 564, 567, 486 P. 2d 840, we held that under our present intervention statute, K. S. A. 1972 Supp. 60-224 (*a*), the right to intervene depends on the concurrence of three factors: (1) Timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests.

At the time appellant's first motion to intervene was fliled its interest was being represented by the city; there is no showing in the record on appeal of inadequacy of that representation although appellant apparently sought to convince the trial court that was the fact. The trial court found that the representation was adequate. No abuse of discretion in that ruling appears.

Appellant further asserts error in the denial of its second motion to intervene. The law is well settled with respect to appellant's interest in the subject matter of the action—the rezoning of land close to property owned by its members. In 101 C. J. S., Zoning, § 352, p. 1184, this statement appears:

"*Intervention.* Property owners in the vicinity of the affected land, and other interested persons may, in a proper case, be permitted to intervene as parties in a proceeding to review a decision of a zoning body. . . ."

Our cases are in accord with the foregoing principle (see, *e. g.*, *Moyer v. Board of County Commissioners*, 197 Kan. 23, 415 P. 2d 261).

When appellant filed its second motion to intervene it was apparent that representation of its interest had come to an end—by moving to dismiss the appeal the city was simply withdrawing from further litigation. The third requisite is that the application to intervene be made timely. Here it was made the next day after the city had filed its motion to dismiss and before the motion had been acted upon.

This court dealt with the subject of intervention in a zoning controversy in a somewhat analogous situation in *Moyer*. There the zoning authority, the board of county commissioners, had denied the request of certain landowners to rezone their property. The landowners brought mandamus in district court to compel the board to grant the proposed rezoning, alleging the board's denial order was unreasonable and arbitrary. During the trial counsel for certain adjoining landowners, who objected to the proposed rezoning, was permitted to sit at the counsel table and assist the defendant board's attorney. The trial court found the board's denial order was unreasonable and discriminatory and ordered the proposed

rezoning to be granted. The board's attorney informed the adjoining landowners in open court that the board would not file a motion for new trial and would not take an appeal. The adjoining landowners then filed an application to intervene as defendants for the purpose of filing a motion for new trial and perfecting an appeal if the motion for new trial was denied. This motion was overruled. The adjoining landowners appealed, challenging both the denial of their motion to intervene and the judgment on the merits. This court sustained the adjoining landowner's position and reversed, in the course of which this was said:

"Until such time as the county attorney announced that he was not going to file a motion for a new trial and appeal the case if a new trial was denied, the adjoining landowners had been adequately represented by the Board of County Commissioners. On being informed of the defendant's intentions, the adjoining landowners filed their motion to interevene and attached thereto was a motion for a new trial all filed within ten days after the judgment. The requirement for 'timely application' to intervene has no application under K. S. A. 60-224 (*a*) (2) until such time as adequate representation ceases.

"We are forced to conclude that there was 'timely application' as that term is used in the intervention statute.

"The Board of County Commissioner's failure to take an appeal clearly demonstrates inadequate representation of the adjoining landowners. We do not wish to be understood as holding that to constitute adequate representation an appeal is necessary in every case. However, here we have an administrative body charged by the trial court with unreasonable and discriminatory conduct in the face of a strong presumption that the members properly performed their duties. The necessity of an appeal to protect the rights of the adjoining landowners will be more clearly demonstrated as we consider the record on the merits. Where the application is timely made intervention should be allowed after a final decree where it is necessary to determine some right which cannot otherwise be protected." (pp. 26-27.)

In *Moyer* we quoted approvingly the following from *Wolpe v. Poretsky,* 79 App. D. C. 141, 144 F. 2d 505, 508, cert. den. 323 U. S. 777, 89 L. ed. 621, 65 S. Ct. 190:

" 'The application to intervene was timely. Intervention may be allowed after a final decree where it is necessary to preserve some right which cannot otherwise be protected. Here at least one of the rights which cannot be protected without intervention is the right of appeal. The court was, therefore, in error in denying appellants leave to intervene as a matter of right.' (p. 144.)" (p. 27.)

The rules expressed in *Moyer* appear to be the majority view (59 Am. Jur. 2d, Parties, § 170; Anno.: Time For Intervention, 37 ALR 2d 1306, § 15, and Later Case Service, p. 627).

Appellees contend *Moyer* is materially distinguishable from the

case at bar and nothing said there should be applicable because here appellant failed to file notice of appeal from the order denying new trial within thirty days from December 10, 1971, the date the motion for new trial was overruled and hence is not entitled to a review of the judgment on its merits. In support they cite cases which simply apply the provisions of K. S. A. 60-2103 (*a*) respecting the time within which an appeal must be taken after a motion for new trial has been acted upon. The cited cases do not deal with intervention and are not pertinent. Appellees' argument in effect ignores the essential nature of intervention and its concomitants.

Some of the rules applicable are more fully expounded in 59 Am. Jur. 2d, Parties, thus:

"A person who intervenes in a pending action becomes a party thereto and his action is merged with the main action. Thus intervention, it is said, is the grafting of one action on another, the trying of the combined issues at one trial, and the determination of them by one judgment. . . . [§ 171, p. 604]

"Intervention is an action within an action and, being ancillary in nature, partakes of the character of the subject matter of the main action regardless of the character of its own subject matter. Jurisdiction of the intervention action is governed by jurisdiction of the main action; pleadings and evidence in the intervention constitute pleadings and evidence in the main action. . . ." (§ 179, p. 618.)

In *Godfrey L. Cabot, Inc. v. Binney & Smith Co.*, 46 F. Supp. 346, the court stated:

"Intervention presupposes the pendency of a suit in a court of competent jurisdiction, and one who voluntarily becomes a party thereto, impliedly, if not expressly, accepts the proceedings as he finds them at the time of the intervention; the intervenor is, for all intents and purposes, an original party. [Citations] The intervenor is as fully bound by the record and as fully entitled to avail himself of it as if he had been an original party thereto." (p. 347.)

More recently, in *Campbell American Legion v. Wade*, 210 Kan. 537, Syl. ¶ 1, 502 P. 2d 773, this court held that the provisions of K. S. A. 60-224 (*a*) should be liberally construed in favor of intervention.

From all the foregoing the conclusion is inescapable that appellant should have been allowed to intervene as of right. Its members owned property which would be affected by the rezoning and it made prompt application to intervene when representation of its interest ceased. Without intervention its right of appeal could not otherwise be protected. Application was made while the proceeding was still pending in the sense the court had

not yet acted on the city's motion to dismiss. The trial court erred in denying the second application to intervene. Review of the judgment on the rezoning action on the points raised by the city is consequently in order.

As already indicated, appellees are the owners of a 9.3 acre tract of land situated in the Argentine district of Kansas City. It was zoned single-family. Appellees filed an application to rezone to "E" apartment classification. They planned to construct on the property a ninety-seven unit medium-priced townhouse complex with 271 parking spaces. Initially the planning commission considered the application and forwarded it to the board of city commissioners without recommendation. The city commission did not act on the application and eventually sent it back to the planning commission. The second time the planning commission forwarded the application to the city commission with a recommendation that it be denied. It appears that at hearings before the planning commission a number of protests were made, some by members of the appellant Argentine group. Emphasized as grounds for opposition were inadequate sewer facilities, inadequate streets and overcrowding of schools in the area. The board of city commissioners conducted a hearing and denied the requested rezoning. Further mention of factors considered by the city bodies will be made later. Thereafter the appellee-landowners brought the matter to district court for review.

Several witnesses appeared at the hearing in district court. On behalf of the landowners there was testimony the land was somewhat rocky and sloped downward toward Shawnee Drive, the principal street serving the property; the tract would be unfeasible for single-family dwellings because of land and sewer costs; the landowners own the tract immediately adjoining the property in question on the north; this tract already has been zoned for apartments and a sewer system has been erected, costs for which could be shared between the two tracts; three other tracts in the general area have been zoned for apartments; exhibits revealed the topography of the land and the nature of the proposed townhouse building; in terms of land use the requested rezoning would be appropriate; however, land use is not the only consideration; problems had existed in the trunk sewer and it was not definitely known whether these had been solved although efforts had been made to locate breaks; twenty feet or more would be necessary to widen the road and considerable grading would have to be done on the

south side of the property in order to improve visibility for traffic. One of the landowners testified they had agreed to "give up some land" to flatten the curve on Shawnee Drive where it intersects Espenlaub Lane.

On behalf of the city there was testimony that both Shawnee Drive and Espenlaub Lane were too narrow to accommodate the traffic, sewer problems existed which had not been solved, the schools were overcrowded, there was no play area for children in the proposed development and a sufficient number of apartment complexes already existed in the Argentine area. The city planning director testified as to some of the reasons for the city's refusal to rezone: There were problems with inadequate streets and sewers in the area; it was believed those problems should be corrected prior to rezoning and this had not occurred; breaks in the sewer had not been repaired; he was not sure the plans submitted by the landowners showed a sufficient amount of right-of-way or slope; conformance to the requirements made by the city had "never really been pinned down"; the right-of-way which had been offered would not accommodate the realignment which the city continuously had proposed; the adequacy of general facilities necessary to serve a given development is a factor to be considered as well as land use in determining whether to rezone.

At the conclusion of the hearing the trial judge simply announced that the city commission's action in denying the requested rezoning was unreasonable and arbitrary and he directed the city to issue to the appellees a building permit under "E" apartment classification. No further findings were made orally. The journal entry eventually filed, omitting mention of appearances, formal parts and the like, stated:

"The Court finds that the real estate concerned in this action and in said zoning petition No. 1016 is situated in an area, which, by previous actions of said defendant City has been committed to an overall multiple family use and that the failure of the defendant City to change the zoning classification of the property here concerned from a single family classification to that of 'E' Apartment classification, was for such reason unreasonable and arbitrary.

"The Court finds that said defendant City should be ordered to change the zoning classification of the real estate concerned to 'E' Apartment classification."

Appellant first complains the trial court failed to find and state the controlling facts as required by K. S. A. 60-252 (a) and the controlling principles of law as required by Rule No. 116 (209 Kan. xxxviii). Without laboring the matter, we think the court's

findings and conclusions might well have been more definitely and comprehensively stated. For our views on the subject, see *Duffin v. Patrick,* 212 Kan. 772, Syl. ¶ 2, 512 P. 2d 442, and corresponding part of the opinion.

Appellant asserts the trial court applied improper legal standards in considering the evidence before it and its decision was contrary to the evidence in that the reasonableness of the city's action denying the rezoning was clearly shown.

Preliminarily, we should note the oft-repeated rules pertinent to judical review of a zoning proceeding, both in the trial court and here.

In *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213, we said:

"It must be understood that the governing body has the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning. The power of the court is limited to determining (1) the lawfulness of the action taken, that is whether procedures in conformity with law were employed, and (2) the reasonableness of such action. As to the second, the court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable unless clearly compelled to do so by the evidence. There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof." (pp. 734-735.)

In *Paul v. City of Manhattan,* 212 Kan. 381, 511 P. 2d 244, opinion filed June 9, 1973, we emphasized the rule that upon judicial review of a zoning action the court does not *de novo* "weigh the evidence" before the zoning authority.

And in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P. 2d 828, 28 ALR 3d 472, the rules respecting our review in a proceeding such as this were summed up in this fashion:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." Syl. ¶¶ 1 & 2.)

The record here is clear that the city in denying rezoning was concerned that the proposed development would overtax certain essential facilities, namely, sewers, streets and already overcrowded neighborhood schools. Problems existed in the sewer trunk line

which had never been solved despite efforts to locate and correct the defects. The offer by the landowners to donate land would not accommodate the street realignment continuously proposed by the city. Conformance to the city's various requirements in an effort to solve existing problems had, in the homely expression of one official, "never really been pinned down." The landowners' offer was to give "some" land but nothing definite had been done. The evidence indicated the district was near the saturation point in multiple-type housing. The foregoing facts were never directly refuted although there was an effort to minimize and sidestep their existence.

Greater density of population means increasing pressure and demand on city services and prevention of undue population concentration in a given area is a factor to be considered in changing zoning classification (see 8 McQuillin, Municipal Corporations (3d ed.), Zoning, § 25.80). We know of no reason why at any given point in time the city fathers may not call a halt to a substantial increase in density in a particular area. In any event the matter is primarily one for municipal or legislative policy as distinguished from judicial.

We fail to find anything which indicates the city's refusal to rezone was unreasonable or arbitrary. It considered factors relevant to proper zoning. The most that can be said from the standpoint of appellees is that the matter before the city was fairly debatable. In the language of *Arkenberg* ". . . That being so, the court may not substitute its judgment for that of the city in order to change the decision on the debate." (p. 738.)

Appellees stress the fact the testimony revealed that an appropriate use of the tract sought to be rezoned would be for apartment buildings. The same testimony revealed that other factors should also be taken into account. The most appropriate use of the land throughout an entire city is not to be discouraged; however, the highest and best use of a particular tract is not necessarily a controlling factor. In *Coughlin v. City of Topeka*, 206 Kan. 552, 480 P. 2d 91, we declared as much:

"'Highest and best use' is only one of the criteria to be considered. If this were the only criteria no residential district could withstand an attempt to rezone for commercial purposes." (p. 556.)

Appellees also stress that the city's refusal to rezone was inconsistent with its other zoning actions granting apartment use in the area and therefore was discriminatory against them. This was the

theory advanced in *Barclay v. Mitchum*, 186 Kan. 463, 350 P. 2d 1109, and evidently was that relied upon by the trial court in overturning the city's action. The precedential value of *Barclay* in zoning law has been largely eroded by subsequent decisions. In *Moyer* discriminatory action was charged against the zoning authority because it had rezoned one tract in the area of appellees' land but had denied appellees' request for like rezoning. The trial court reversed the judgment of the zoning authority and directed the requested rezoning. On appeal appellees relied heavily on *Barclay* in support of the trial court's action, respecting which we had this to say:

"The case is hardly a precedent for the determination of the case now before us on the merits. The Barclay case was tried under the old Code of Civil Procedure and because of the failure to file a motion for a new trial this court was bound by the trial court's findings. The evidence was not properly before us for review. The case is largely a precedent for a procedural question under the old code. (p. 29.)

In *Bodine v. City of Overland Park*, 198 Kan. 371, 424 P. 2d 513, this statement appears:

". . . Counsel for the appellant also relies upon the *Barclay* case for the proposition that if the property in question is rezoned under an R-4 garden apartment classification, it would open the door and require further R-4 zoning in the immediate area.

"Recent zoning cases appealed to this court instituted under 12-712, *supra,* and 19-2913, *supra,* indicate that both the Bench and Bar of this state are attaching entirely too much significance to the decision in *Barclay v. Mitchum,* supra." (p. 388.)

Our review of the entire record convinces us there was a sufficient showing of reasonableness in the city's refusal to rezone and the trial court erred in concluding otherwise.

The judgment is reversed and the cause remanded with directions to enter judgment for appellant.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: I must respectfully dissent. It is utter nonsense to say the interveners were adequately represented in this case until after judgment and after a motion for a new trial had been filed, when they first moved to intervene. Their application to intervene was *not timely made* and the trial court's determination on this matter should not be reversed. My views are expressed in considerable detail in my dissenting opinion in *Moyer v. Board of County Commissioners*, 197 Kan. 23, 415 P. 2d 261, at page 31 in the official report, where the situation was substantially the same as here.