No. 55,240

TACO BELL, *Appellee,* v. CITY OF MISSION, KANSAS, *Appellant.*
ARTHUR TREACHER'S FISH AND CHIPS, INC., *Appellee,* v. CITY OF
MISSION, KANSAS, *Appellant.*

(678 P.2d 133)

 Opinion
filed February 18, 1984. 

*David K. Martin,* of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellant.

*James F. Davis,* of Brown, Koralchik & Fingersh, of Overland Park, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a trial court decision holding the City of Mission acted unreasonably, arbitrarily and capriciously in a zoning decision.

In September, 1981, Taco Bell entered into a contract to purchase a vacant lot on the northeast corner of Johnson Drive and Walmer in Mission, Kansas, from Arthur Treacher's Fish & Chips, Inc., for $150,000, subject to rezoning for a drive-thru fast-food restaurant.

The Taco Bell site has been vacant for many years. Prior to Taco Bell's application the site was zoned special class for retail development as an automobile service station. Taco Bell requested special class zoning to construct its drive-thru window restaurant pursuant to Chapter 18.34 of the Mission Zoning Regulations.

The Mission planning commission and city council have consistently rejected applications for retail use of the vacant site, including a request for a Kentucky Fried Chicken restaurant, a Wylie's Fast-Food restaurant and an automatic car wash.

Johnson Drive, upon which the site fronts, is a four-lane highway through the City of Mission. It is capable of handling up to 23,000 vehicles a day. The City's most recent traffic count is approximately only 20,800 vehicles a day. Johnson Drive cannot be expanded to increase its capacity for additional traffic without great financial cost. Toward the west end of Mission, three residential streets intersect Johnson Drive from the north. These are Riggs, Walmer, and Russell. These streets provide access to a stable residential area to the north of Johnson Drive.

To the south of Johnson Drive the area has developed as retail-commercial. There is another east-west thoroughfare, Martway Street, which handles traffic throughout the retail-commercial area, with Martway Street to the south of Johnson Drive.

The Taco Bell site plan satisfied all of the City's requirements pertaining to parking, signage and elevations. Taco Bell's proposed facility would have a seating capacity of forty persons. Its hours of operation were until midnight during the week and later on weekends. The environmental or aesthetic impact of the proposed Taco Bell operation is not of any different kind or degree than the developments already present along the north side of Johnson Drive except Taco Bell would contain a drive-thru facility. The adjoining businesses of Winchell's Donuts and Arthur Treacher's are separated from the residential area by only a chainlink and wooden fence respectively.

The Taco Bell application was heard by the City Planning Commission on January 18, 1982. The Planning Commission unanimously recommended to the City Council that the application for the rezoning be denied. On March 10, 1982, after further review by the planning commission, the City Council also unanimously denied Taco Bell's application for rezoning. The City Council denied Taco Bell's application based on the Planning Commission's expressed intentions to rezone a portion of the north side of Johnson Drive for office use. The only information presented by Taco Bell to the Planning Commission or the City Council in support of its rezoning application was the oral testimony of Michael Staenberg, the realtor for the Taco Bell/Arthur Treacher's property sale. On April 6, 1982, after the City denied its application, Taco Bell filed suit alleging the City was arbitrary, capricious and unreasonable in denying its application.

Subsequently, on June 23, 1982, the City Council voted to "down zone" a portion of the north side of Johnson Drive to office use. This area included the Taco Bell site as well as Arthur Treacher's, a Winchell's donut shop and a Sizzler restaurant. Such zoning could not be implemented immediately because of the existence of the three restaurants presently in operation. Thus, this change would affect only the selling price of the property, since it could be sold only for office use rather than use as another restaurant.

Appearing before the Planning Commission and City Council on the blanket down-zoning were Michael Staenberg, the realtor for Taco Bell, and James Davis, Taco Bell's attorney.

On July 19, 1982, Arthur Treacher's also filed an action in

Johnson County District Court alleging the City's blanket zoning as applied to Arthur Treacher's facility was arbitrary and capricious. In addition, Taco Bell filed an amended petition on July 15, 1982, alleging the blanket zoning, as applied to the vacant lot it wanted to purchase, was arbitrary, capricious and unreasonable. The Taco Bell lawsuit and the lawsuit of Arthur Treacher's were consolidated for trial.

Prior to trial, upon motion of Taco Bell, the trial court struck the City's defense that the court lacked jurisdiction over Taco Bell because Taco Bell was not the owner of the property which it desired to rezone as required by K.S.A. 12-708.

The Taco Bell site and the Arthur Treacher's site are situated within a retail commercial zone fronting along both the north and south sides of Johnson Drive. The strong retail commercial character of the sites is well defined by reference to nearby uses, such as two automobile dealerships (one north side, one south side), a Vicker's Service Station (south), Captain D's Fish & Chips (south), McDonald's (south), Arby's (south), Winchell's donut shop (north), Arthur Treacher's Fish & Chips (north) and Mission West Shopping Center (south). Leasing plans for the Mission West Shopping Center called for future development of nineteen retail stores to the south of the subject site. The various retail commercial users on the north of Johnson Drive all border directly on residential areas.

There has been no recent indication of small office building development along Johnson Drive in the Mission area and the local market for office space has been soft for well over a year, as is evidenced by the area's high vacancy rate and the substantial rent concessions being offered by landlords to attract tenants.

The residential neighborhoods to the north of the subject site have remained stable in recent years notwithstanding the extensive growth of retail development, which has included various fast-food restaurants with drive-thru facilities.

On December 8, 1982, the district court rendered its decision finding the City's actions in the Taco Bell and Arthur Treacher's matters were arbitrary, capricious and unreasonable. The City of Mission appeals.

We first consider appellant's initial argument that Taco Bell did not qualify as a landowner or as a party with such an interest in the property as to entitle it to challenge the zoning actions of the City.

The appellees argue this point was not raised at the trial level since the contract for sale between Taco Bell and Arthur Treacher's was entered without objection. The issue was raised, however, in the pretrial order where the trial court ruled Taco Bell had standing. Even though the issue was not renewed at trial it is properly before this court as an exception to the general rule. The general rule is that an issue not raised before the trial court may not be raised for the first time on appeal. *Lantz v. City of Lawrence*, 232 Kan. 492, 500, 657 P.2d 539 (1983). There is an exception to the rule if a newly asserted argument involves only a legal issue arising on proven or admitted facts. See *State v. Puckett*, 230 Kan. 596, 598, 640 P.2d 1198 (1982).

As previously stated, standing is a legal question which may be resolved here by a determination of proven facts. Thus, this court will consider the standing issue even though allegedly raised for the first time on appeal. Taco Bell submitted the application for the requested zoning change, although Arthur Treacher's is the legal owner of the property. The reason for the action on the part of Taco Bell, as opposed to Arthur Treacher's, is the purchase agreement between the two parties. Arthur Treacher's agreed to sell the land to Taco Bell contingent upon Taco Bell successfully obtaining rezoning to allow a drive-thru fast-food restaurant on the location. The purchase contract between the parties provided for Taco Bell to obtain rezoning as Arthur Treacher's agent.

Taco Bell's interest and authority to act for Arthur Treacher's was accepted throughout the proceedings with the City. There is no evidence Taco Bell acted without Arthur Treacher's complete consent.

The appellant argues, however, the law in Kansas allows only the landowner to seek rezoning. In support appellant notes the language of K.S.A. 12-708, which provides:

"A proposal for such amendment may be initiated by the governing body, the planning commission or upon application of the owner of property affected."

Appellant further cites *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 523 P.2d 755 (1974). That case involved a group of citizens who sought to delay the utility company's condemnation proceedings. The group argued the utility company could not condemn their property until it

had successfully secured all proper rezoning. The court held the utility company could not be required to rezone the property prior to condemnation since "it is apparent that one who is not the owner of property affected may not make application for a change in zoning." 215 Kan. at 236.

*Concerned Citizens* is not applicable here. In that case the utility company shared no interest with the landowners. There was no agreement or connection between the parties. In the case at bar, Taco Bell and Arthur Treacher's both want to accomplish the rezoning. Their interest is not only the same, but it is expressed in writing in their purchase agreement.

On the contrary, *Martin Marietta Aggregates v. Board of Leavenworth County Comm'rs*, 5 Kan. App. 2d 774, 625 P.2d 516, *rev. denied* 229 Kan. 670 (1981), is applicable. In *Martin Marietta* surrounding landowners were challenging the efforts of Martin Marietta to obtain a special use permit to allow mining. Martin Marietta did not own the land, but rather had an option to lease the land if they were successful in obtaining the special use permit. The surrounding landowners argued Martin Marietta was not the real party in interest, as required by the law of variances. The Court of Appeals pointed out that although a landowner and not a lessee must suffer the hardship necessary to prove the need for a variance, such was not the case with a special use permit. The court adopted the reasoning of *Burr v. Keene*, 105 N.H. 228, 230, 196 A.2d 63 (1963), which states:

"As pointed out by counsel for the defendants no useful purpose would have been served by requiring the owners' signatures on the petitions. The prospective purchasers were the real parties in interest and the only ones who could furnish the information which the board needed in order to make its decision."

This logic is more applicable here than in *Martin Marietta* since Taco Bell has an option to buy, not merely an option to lease, after the rezoning is accomplished. Additionally, as the *Burr* court reasoned, it is Taco Bell's field engineers, marketing representatives, traffic consultants and designers who must be in close contact with the planning commission and city council during the planning stage for this development, not Arthur Treacher's. Arthur Treacher's only interest is seeing the real estate contract consummated and the purchase price received. It would not be reasonable to require Arthur Treacher's, which is the landowner, to expend the time and expense of seeking rezoning which was purely for Taco Bell's benefit.

Additionally, the zoning ordinances of the City of Mission specifically allow a landowner "or his authorized agent" to submit an application for rezoning. See Mission Zoning Ordinance No. 18.60.010. This alone is persuasive in supporting the trial court's decision to allow Taco Bell to bring this suit.

Appellant also argues Taco Bell lacks standing to challenge the blanket zoning order made by the City on June 23, 1982. This action allowed only office use on certain sites on the north side of Johnson Drive, which includes the Taco Bell property and Arthur Treacher's restaurant.

K.S.A. 12-712 provides only parties having an interest in the property affected may challenge the reasonableness of a zoning change. The City argues appellee was not a party with an interest in the property due to a clause in the Taco Bell/Arthur Treacher's purchase contract. The clause stated Taco Bell had 180 days from September 8, 1981, to obtain rezoning. Since the blanket zoning action on June 23, 1982, occurred after the 180 days had lapsed, the City argued Taco Bell lacked sufficient standing. Appellee alleges the contract contains no automatic termination provision. Further, the undisputed evidence was that Arthur Treacher's and Taco Bell continued to reaffirm their collective interest in the vacant tract at all City meetings, including the June 23, 1982, council meeting. Taco Bell's regional real estate manager testified Taco Bell still was the contract-purchaser under the purchase agreement on date of trial. In June, 1982, appellee was a party having an interest in the property affected by the zoning change as required by K.S.A. 12-712.

Based upon the realities of the Arthur Treacher's/Taco Bell contract which provided for Taco Bell to obtain rezoning in cooperation with Arthur Treacher's, we hold Taco Bell had standing to bring the case at bar.

The appellant next argues the trial court erred in ruling the City was arbitrary and unreasonable in denying Taco Bell's request to change the allowed use of the vacant lot from an automobile service station to a fast-food restaurant with a drive-thru window facility.

The law in Kansas is well settled concerning the scope of judicial review of zoning matters. These rules are:

"(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

"(2) The district court's power is limited to determining
 (a) the lawfulness of the action taken, and
 (b) the reasonableness of such action.

"(3) There is a presumption that the zoning authority acted reasonably.

"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

"(8) An appellate court must make the same review of the zoning authority's action as did the district court." *Combined Investment Co. v. Board of Butler County Comm'rs,* 227 Kan. 17, 28, 605 P.2d 533 (1980).

In judging the actions of the City to be arbitrary and unreasonable in denying Taco Bell's application, the trial court utilized the appropriate scope of review and applied the test of reasonableness established by this court in *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978). Prior to *Golden* the standard for determining "unreasonable" was so general and nondescript a court was helpless in applying any comprehensible standards to test the validity of zoning determinations. The results of applying such ambiguities as "beyond the realm of fair debate" and "reasonableness" often resulted in the City prevailing merely by presenting *some* evidence to support its action. Such is no longer the case. This court in *Golden* defined the factors which it suggested "would be well for a zoning body to bear in mind when hearing requests for change." 224 Kan. at 598. These factors are:

"1. The character of the neighborhood;

"2. the zoning and uses of properties nearby;

"3. the suitability of the subject property for the uses to which it has been restricted;

"4. the extent to which removal of the restrictions will detrimentally affect nearby property;

"5. the length of time the subject property has remained vacant as zoned; and

"6. the relative gain to the public health, safety, and welfare by the destruction of the value of plaintiff's property as compared to the hardship imposed upon the individual landowner."

To these the court added: "the recommendations of permanent or professional staff, and the conformance of the requested change to the adopted or recognized master plan being utilized by the city." *Golden,* 224 Kan. at 598.

Further, this court in *Golden* instructed that a City's rezoning determination on a particular tract rose or fell not on the use of generalized complaints against commercial development such as "noise," "litter," and "traffic," but rather on the defensibility of the City's stated reasons for its actions. The traditional tests of reasonableness were not abandoned but are enhanced by the eight factors which provide a reviewing court with a basis for testing the action of a governing body in a meaningful way.

Let us now review the denial of Taco Bell's application on the basis of the *Golden* criteria.

### THE CHARACTER OF THE NEIGHBORHOOD.

The City argues the area north of Johnson Drive is mainly residential with some light commercial activity. The entire area, however, both north and south of Johnson Drive, is composed of retail business. Fast-food restaurants are quite predominant. On each side of the Taco Bell lot is a fast-food retailer, Winchell's Donuts to the west with Arthur Treacher's to the east. While there are no drive-thru restaurants on the north side of Johnson Drive, there are many to the south which are quite close to the Taco Bell lot.

The City also argues the increased traffic on Johnson Drive caused by the Taco Bell would require substantial improvements to the streets north of Johnson Drive as well as Johnson Drive itself. This assertion is without substantiation. Taco Bell presented a proposal to allow exits only onto Johnson Drive from its restaurant in order to keep traffic off the north residential streets. Further, there was no evidence that Johnson Drive in its present condition was not completely adequate to handle Taco Bell's customers.

The City alleges Winchell's and Arthur Treacher's, Taco Bell's neighbors, have lighter customer traffic and a small number of personnel. While Winchell's is slightly lower in customer traffic, the only competent evidence concerning Arthur Treacher's is that it has the same amount of traffic as Taco Bell is projected to have.

The City speculates, without support, that one lone drive-thru

fast-food restaurant will disrupt the peace and quiet of this entire area, as if there were no other commercial activity nearby. In actuality, the entire neighborhood is commercial/retail with the exception of the private homes to the north of the businesses which are situated on the north of Johnson Drive. The Taco Bell lot is surrounded on all sides, except to the north, by busy retail establishments. The trial court did not err in finding the character of the neighborhood was strong retail-commercial.

THE ZONING AND USES OF PROPERTY NEARBY.

Prior to this action the Taco Bell lot was zoned for a gasoline service station. In considering the effect of the restaurant proposed by Taco Bell on the nearby property, the trial court found "the planned fast-food store with a drive-thru capacity appears to be a less intensive use than a gasoline service station." Substantial evidence was introduced at trial in support of this finding. Further, the trial court held: "Whatever impact the commerce of Johnson Drive may have on the adjacent residential area, the addition of one further restaurant should not significantly alter that impact."

The testimony at trial established the residential property adjacent to the businesses on the north side of Johnson Drive, while affected by the retail activity there, would not be harmed by the addition of the Taco Bell as compared to all the other retail businesses.

THE SUITABILITY OF THE SUBJECT PROPERTY
FOR THE USES FOR WHICH IT HAS BEEN RESTRICTED.

The property, although zoned for use as a service station, was never developed as such. Testimony was offered at trial showing gas stations are not being built or purchased these days due to market conditions. The property, however, is now zoned C-O (office building). The City states this action was taken in order to provide better transitional zoning between the retail businesses and the residential area. While it is true office buildings provide transitional zoning, there was overwhelming evidence at trial that a demand for office buildings in Mission does not exist. The City admits this is currently true but speculates the future may have a need for such development.

This court in *Golden* faced a similar argument. In that case the landowner presented substantial evidence that at the time of trial there were many vacant office buildings in the Overland Park

area and the landowner's property was not attractive for office development. The City of Overland Park argued that in the past while the landowner had owned the tract in question there had been a great demand for office buildings. In determining this was irrelevant to the facts at trial, this court held: "The issue is whether zoning for office construction was appropriate at the time of the hearing . . . . A massive overbuild of office space . . . leads to the inevitable conclusion that the demand for additional office space did not exist . . . ." 224 Kan. at 600. Such is the case here. Experts from the fields of real estate sales, construction and real estate appraising all testified office buildings in Mission were vacant; tremendous rent concessions were being made by landlords in order to keep tenants; there had been no activity on some office building listings for over a year; no office buildings were being constructed on Johnson Drive; and finally, it would be extremely difficult to lease office space in a building located between two fast-food restaurants. The witnesses agreed any office building on the Taco Bell site would be a losing proposition.

The trial court's finding it is not feasible to develop the Taco Bell site as an office building is supported by substantial, competent evidence.

THE EXTENT TO WHICH REMOVAL OF THE RESTRICTIONS WILL DETRIMENTALLY AFFECT NEARBY PROPERTY.

The City contends the economic value of the residential area will be decreased by the placement of a fast food restaurant on the vacant lot. The evidence at trial, however, was that selling time could possibly be delayed but selling price would not be hurt. Other expert testimony was offered showing any decrease in value occurred years ago when Johnson Drive was developed commercially and one more restaurant could not realistically be linked to a decrease in property values.

The City also argued Taco Bell could not provide proper screening for lights or automobile ódors, or provide for other aesthetic considerations. Expert testimony was admitted which demonstrated substantial planning for green areas to include trees, shrubbery, fences and landscaping, all of which would result in effective screening. It was pointed out that Arthur Treacher's and Winchell's have only fences, one wooden and one chain link, to separate their property from the residential

properties adjacent to them. Taco Bell's plan provided substantially more than a fence.

It is also argued by the City that permitting the construction of Taco Bell would make the area less safe for children. A sidewalk and signaled crosswalk presently exist on the north side of Johnson Drive. There is no evidence Taco Bell would interfere with these. Additionally, Hickory Grove Elementary School, to the south and east across Johnson Drive from the vacant lot, is no longer used as an elementary school. The number of children on Johnson Drive has thus substantially decreased.

The major detriment the City urges would result from the Taco Bell restaurant is increased traffic. For support of this the City cites *Moyer v. Board of County Commissioners,* 197 Kan. 23, 30, 415 P.2d 261 (1966). The *Moyer* case, however, is easily distinguishable. There the court found traffic was an important consideration when the landowner proposed to build a service station on property completely surrounded by a residential neighborhood. The court held the attracting of outside traffic into an area where it would not normally venture was a detriment to the zoning change. Here there is no evidence new traffic will be attracted to the area. Taco Bell expects to receive its customers from the 20,000 plus vehicles which already drive on Johnson Drive each day.

Taco Bell contends the City's traffic objections are further evidence of the unreasonableness of its action. As proof, Taco Bell points to the new expansion of Mission West Shopping Center, which when completed will include nineteen new retail stores. This expansion was allowed despite complaints from residential neighbors concerning traffic problems. Mission West is across Johnson Drive from the vacant lot. Taco Bell convincingly argues it is arbitrary behavior for the City to reject its zoning change based on the same complaint received and rejected against the shopping center.

Taco Bell additionally indicates if traffic is the deciding factor in this area, then any commercial development, no matter how small, in a retail district would be threatened. Considering this argument, the Missouri Supreme Court held:

"[A]ny added traffic congestion which would be caused by any ordinary commercial use of this tract would be wholly insignificant, when compared to the existing volume of traffic and congestion; . . . thus the tract should not be

penalized because of existing traffic conditions." *Huttig v. City of Richmond Heights,* 372 S.W.2d 833, 840 (Mo. 1963).

The trial court adopted the foregoing rationale in its Conclusion of Law No. 18:

"A city council should consider all matters affecting safety, health and public welfare in considering a particular planned zoning request. One of these matters frequently is the traffic flow in, through and around the proposed project. Where basic safety considerations have been met an application may not be rejected because the project will increase the traffic flow on the existing street network, particularly where the development is of small size in relation to the capacity of traffic on the adjoining streets. The simple fact that a proposed use would generate additional traffic is not relevant to the proper land use for that property."

Both the Missouri Supreme Court and the court below express the proper balance between zoning changes and traffic considerations. The lone Taco Bell restaurant in this case should not be disallowed merely because it might have an impact on traffic. We warned in *Golden* of the danger of a governing body relying on such general considerations as "traffic problems" and "traffic congestion" to control zoning decisions.

The City traffic engineer testified no new traffic signals would be needed after the Taco Bell was built because the traffic increase would be insignificant. The City's evidence that nearby property would be detrimentally affected by the Taco Bell restaurant is not persuasive.

THE LENGTH OF TIME THE SUBJECT PROPERTY
HAS REMAINED VACANT AS ZONED.

For thirteen years, from 1969 to 1982, the property was zoned to allow a gasoline service station and remained undeveloped. The office district zoning has only been in effect since June 23, 1982. The evidence nevertheless demonstrated the City has an oversupply of office space, as previously discussed, and the area is thus not adaptable to that use.

THE RELATIVE GAIN TO THE PUBLIC HEALTH, SAFETY,
AND WELFARE BY THE DESTRUCTION OF THE VALUE
OF THE PLAINTIFF'S PROPERTY AS COMPARED
TO THE HARDSHIP
IMPOSED TO THE INDIVIDUAL LANDOWNER.

When analyzing the gain to the public it must be remembered who constitutes the "public." This court has previously held: "Zoning is not to be based upon a plebiscite of the neighbors,

and although their wishes are to be considered, the final ruling is to be governed by consideration of the benefit or harm involved to the community at large." *Waterstradt v. Board of Commissioners,* 203 Kan. 317, Syl. ¶ 3, 454 P.2d 445 (1969). Thus, while residents neighboring the proposed Taco Bell site have protested its development, the benefit to the community as a whole must be considered. The neighbors argue there would be traffic, noise, light and odor problems. These have already been addressed and the evidence shows they can be alleviated by screening. The benefit to the public in not developing seems to be minimal. The benefit to the public in developing is great in the way of jobs, taxes, and use of previously unproductive property.

The hardship to the owner of not allowing the zoning change is also great. As previously explained, development as an office would be highly unlikely. The lot would thus remain unused and unprofitable to the owner.

THE RECOMMENDATIONS OF PERMANENT<br>OR PROFESSIONAL STAFF.

The City of Mission does not employ any permanent professional land-use planners. The City argues nevertheless it relied upon a previous decision of the district court upholding the City's decision not to allow another fast-food drive-thru restaurant, Burger King, to locate on the north side of Johnson Drive. The district court decision was not appealed.

An unpublished decision of a district court has no binding effect on this action except for its persuasive value. See *In re Sawyer,* 234 Kan. 436, 672 P.2d 1093 (1983). In addition, the Burger King case is distinguishable on the facts. The Burger King restaurant called for an operation about three times the magnitude of the proposed Taco Bell. Also the Taco Bell site provides natural screening from the contour of the land. The Burger King land was on the same level as the adjoining properties, and Burger King proposed no additional screening, unlike Taco Bell. The reliance by the City on the previous district court case was misplaced and is not persuasive in the case at bar.

THE CONFORMANCE OF THE REQUESTED CHANGE<br>TO THE ADOPTED OR RECOGNIZED MASTER PLAN<br>BEING UTILIZED BY THE CITY.

The City argues it was guided in its decisions in the Taco Bell proceedings by its new master plan, designated at trial as de-

fendant's exhibit D. Exhibit D is a map of the City of Mission. It is color-coded to indicate multi-family, commercial, office district and parks and open spaces. Only a small portion of the city is so colored. It is not indicated what zoning designation the uncolored portions have. The exhibit appears very unprofessional.

Taco Bell argues this map does not qualify as a comprehensive plan pursuant to K.S.A. 12-704. This statute authorizes city planning commissions to make comprehensive master plans to help plan for future development in their cities. The statute gives guidelines for the preparation of such plans as follows:

"[T]he planning commission shall make or cause to be made comprehensive surveys and studies of past and present conditions and trends relating to land use, population and building intensity, public facilities, transportation and transportation facilities, economic conditions, natural resources, and may include any other element deemed necessary to the comprehensive plan. Such proposed plan, which may in addition to a written presentation, include maps, plats, charts and other descriptive matter, shall show the commission's recommendations for the development or redevelopment of said territory . . . ."

When examined in light of the statute, exhibit D falls far short of meeting the legislative requirements. Additionally, the planning commission chairman, Larry Jones, could not remember whether the proposed comprehensive plan had been completed before the filing of this lawsuit. This casts considerable doubt as to the use of this plan by the City as a guide during the proceedings before the planning commission and city council.

Taco Bell argues a 1968 study performed by Howard, Needles, Tammen, & Bergendoff is the recognized comprehensive plan for the City of Mission. This study is a two-hundred page document covering in detail the factors proposed in K.S.A. 12-704 with numerous maps, diagrams and charts to illustrate the written material.

To support its contention that this was the recognized comprehensive plan, one of Taco Bell's expert witnesses, Andrew Schlagel, testified he had visited city hall, requested a copy of the City's master plan and was given a copy of the 1968 Howard-Needles study.

The Howard-Needles plan called for commercial, wholesale and retail development in a strip along the north side of Johnson Drive including the Taco Bell lot. The color-coded map pro-

posed by the City shows office district development in the small area on the north of Johnson Drive.

The City has no ordinance adopting either plan as its official comprehensive plan. This court, however, in *Golden* stated the court should look to either the "adopted or recognized" master plan. 224 Kan. at 598.

Finally, the City argues regardless of which plan is the official one this court has held a city is not bound by or obligated to follow the comprehensive plan. See *Coughlin v. City of Topeka*, 206 Kan. 552, 557, 480 P.2d 91 (1971). It is true the City is not "bound" by the plan, but this court held "they should not be overlooked when changes in zoning are under consideration." *Golden v. City of Overland Park*, 224 Kan. at 598.

In this case, the evidence supporting the granting of the zoning change was overwhelming. The evidence in opposition was minimal. The trial court properly applied the correct rules of law. After examining the entire record, we hold the trial judge did not err in finding the city council's action in denying rezoning unreasonable as a matter of law. See *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 31, 605 P.2d 533 (1980).

The third issue presented is whether the City was arbitrary and capricious in enacting zoning which allowed only office use on the north side of Johnson Drive.

The City rezoned only four retail properties on the north side of Johnson Drive to office use. These were the Taco Bell lot, Arthur Treacher's, Winchell's and the Sizzler. Its action was taken while this case challenging the denial of the zoning change was pending. In support of the rezoning, the City argues historically up until 1969 the area along the north side of Johnson Drive was zoned only for office use and a return to this use was needed to provide adequate buffering for the residential area.

It was not explained by the City why the rest of the retail businesses abutting the residential area were not also rezoned. There was evidence of what appeared to be an anti-restaurant animus among the city planning commission. Several statements were made which indicated the commission wished to eliminate some of the restaurants on the west end of Johnson Drive. If this is true, it appears these four restaurants were arbitrarily singled out to be eliminated for no reason. No study was done to indicate why these particular establishments should be precluded, on the

feasibility of the new office-use zoning, or on the impact of the change to the community as a whole. The city planning commission members when asked to explain the basis for their decision stated they were long-term city residents and they knew what was best for their city. Further, there was evidence they relied heavily upon the opinions of nearby residential neighbors. While these are appropriate considerations they are only part of the picture. The effect of zoning on the public at large is the primary consideration. There was no consideration of the financial hardship to the landowners by the zoning change, no consideration of the public welfare, or consideration of the overall feasibility of such changes. The process was not the thoughtful, issue-oriented analysis required by this court in *Golden.* The City's action in changing the zoning from special use and retail commercial to office district use was arbitrary, capricious and unreasonable.

The judgment of the trial court is affirmed.

LOCKETT, J.: Concurring and dissenting. I agree with the majority that Taco Bell, the contract-purchaser of real estate, has standing to challenge the reasonableness of a zoning change affecting the purchased property pursuant to K.S.A. 12-712. It would serve no useful purpose to create the fiction that the present owner was requesting the zoning change to utilize the property. Taco Bell was the party who would use the land if a zoning change were approved. Taco Bell had the information as to the type of construction planned, use of the facility once constructed and past experience in operation of a taco restaurant. The present landowner's interest is selling the property to Taco Bell.

I agree with the majority as to the scope of judicial review in zoning matters. It is the local zoning authority's right to prescribe, change or refuse to change zoning. There is a presumption that the zoning authority acted reasonably. The court's power is limited to determine if the zoning authority acted lawfully and reasonably. The court cannot substitute its judgment for that of the zoning authority. I agree the scope of review is the test of reasonableness supplied by *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978).

I do not agree that Taco Bell has proven the unreasonableness

of the zoning authority's denial of the requested change. The zoning authority's action was not unreasonable and/or arbitrary. Its action was not taken without regard to the benefit or harm involved to the community at large. The decision of the zoning authority was not so wide of the mark that its unreasonableness lay outside the realm of fair debate.

Most of the evidence presented during the administrative hearing on the zoning change request was in opposition to the change requested by Taco Bell. The neighborhood north of Johnson Drive adjacent to the area was single family residences. The neighborhood had maintained high-quality residential characteristics. Expert witnesses and neighboring property owners voiced serious concerns about the effect the proposed Taco Bell would have on property values. Expert witnesses testified that traffic along Johnson Drive is approaching the saturation point.

The city, through the years, has consistently denied requests for zoning changes on the north side of Johnson Drive to fast-food restaurants which included drive-thru window facilities. Reasons for the denials are contained in the record.

Other than being fast-food restaurants, the two adjoining restaurants are not really comparable in operation according to the evidence before the administrative board. Taco Bell's proposed facility would have a seating capacity twice the size of Arthur Treacher's or Winchell's Donuts. The peak hours of business were shown to be different between the three facilities. Taco Bell would have a greater volume than the other two restaurants during the late night hours. Taco Bell's night hours of operation would exceed those of the other two restaurants. Taco Bell's hours of operation would last until 12:00 midnight during the week and until 2:00 a.m. on the weekends. The parking lot and drive-thru area, situated adjacent to the residential area, would be properly lighted for the safety of customers during the night hours of operation, and the lighting in the parking area may be on all night to protect the property.

Other expert witnesses testified to the additional cost to the city to maintain the area, the availability of other sites on the south side of Johnson Drive, and the economic impact on the value of surrounding land.

Here, the district court and this court, after reciting the scope

of judicial review, have substituted their judgment for that of the administrative body. From the facts presented to the zoning authority, I cannot say that the zoning authority's action was so arbitrary that it was unreasonable under the guidelines outlined in *Combined Investment Co. v. Board of Butler County Comm'rs,* 227 Kan. 17, 28, 605 P.2d 533 (1980), and *Golden,* 224 Kan. 591. I respectfully dissent.