No. 49,960

ROBERT C. HARDER, Secretary of Social and Rehabilitation Services and WILLIAM E. RICHARDS, Director of Social Services, *Appellees*, v. KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant*.

(592 P.2d 456)

Opinion filed March 31, 1979.

*Gary D. Jackson,* of Kansas Commission on Civil Rights, argued the cause; *Arthur W. Solis,* legal intern, and *Roger Lovett,* both of KCCR, and *Curt T. Schneider,* attorney general, were with him on the brief for appellant.

*Robert R. Hiller, Jr.,* of Social and Rehabilitation Services, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the Kansas Commission on Civil Rights (KCCR) from a decision of the district court of Sedgwick County concluding (1) that as a matter of law the exclusion of pregnancy from a public employer's sick leave plan did not constitute discrimination on the basis of sex and (2) that Mrs. Rutledge's resignation from employment did not constitute constructive termination.

The learned trial judge set forth his findings and conclusions in a memorandum decision as follows:

"There is truly no factual dispute in this matter with the exception of one issue, and so the following recitation of the facts of this matter are findings of the Court based on uncontroverted testimony and exhibits with exceptions as noted. Linda Sorrell, then Mrs. Rutledge, a female, commenced her employment with the Sedgwick County Social Welfare Board on September 13, 1971, and continued to be employed by that agency until November 30, 1972. Because of reorganization, that body is now included within the Kansas Department of Social and Rehabilitation Services. While an employee of the SRS, she became pregnant. Her testimony described that pregnancy as a "planned child." During the final month of pregnancy in August of 1972, she requested of her immediate supervisor that she be allowed to use sick leave because of the pregnancy. Her supervisor, Mrs. Edith Webb, stated to her that it was not the policy of the Department to make such an allowance, in fact the contrary was true. The Kansas Civil Services regulations Article 10-2019 (which was in effect at that time), provides:

'Sick leave with pay may be granted only for absence from duty because of the personal illness of the employee or legal quarantine. Pregnancy shall not be considered an illness.'

Upon denial of Mrs. Rutledge's request for sick leave, she was forced to use her annual leave. From August 14, 1972, through August 21, 1972, she used six (6) days of annual leave for this reason. After exhausting all of her annual leave by August 21, 1972, she took leave without pay from August 28, 1972 through September 25, 1972, at which time she resumed employment. The child, unfortunately, had a physical infirmity known as 'colic' and because of the difficulties involved in caring for the child, Mrs. Rutledge found it necessary to take leave without pay in order to rest. Mrs. Rutledge alleges that she was forced to resign because of her inability to take sick leave. The Court can find no factual basis of that allegation, and in fact, the obverse appears to be true that Mrs. Rutledge, in fact, resigned her position out of personal choice to both care for her child and accompany her husband to California.

"The pre-trial order filed in this matter December 8, 1977 in Paragraph I lists seven issues to be resolved. All seven are or proceed from the central issue of whether or not the policy regarding sick leave of the SRS is discriminatory as prohibited by K.S.A. 1977 Supp. 44-1009(a)(1), which provides:

'It shall be an unlawful employment practice for an employer because of the race, religion, color, sex, physical handicap, national origin, or ancestry of any person, to refuse to hire to employ, or to bar or discharge from employment such person or to otherwise discriminate against such person in compensation or in terms, conditions, or privileges of employment; or to limit, segregate, separate, classify, or make any distinction in regard to employees, or to follow any employment procedure or practice which in fact, results in discrimination, segregation or separation without a valid business motive.'

Only if it can be said that Mrs. Rutledge was discriminated against because of her sex, may the issue of damages be approached. It is unnecessary to approach the other issues because I conclude as a matter of law that Mrs. Rutledge was not discriminated against upon the basis of her sex.

"In my opinion, there are two cases which are both directly on point and conclusive and convincing as to their reasoning. They are, of course, *Geduldig v.*

*Aiello,* 94 S.Ct. 2485, 417 U.S. 484, 41 L.Ed.2d 256, and *General Electric Co. v. Gilbert,* 94 S.Ct. 401. While Counsel for the Civil Rights Commission urges that these cases are both Title VII cases and involve insurance plans rather than sick leave provisions, the principles enunciated in both are obviously squarely on point. The wording of the Title VII Prohibition and that of our own Kansas Statute, while not identical, is identical in meaning and impact. The principles of the insurance coverage and annual leave, sick leave, etc. are extremely similar in that both provide a type of compensation when the employee is unable to work. Counsel for both sides have of course read both cases, but there is one particular section of *Geduldig* which is quoted in *Gilbert,* which in my judgment bears repetition:

'The California insurance program does not exclude anyone from benefit eligibility because of gender, but merely removes one physical condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant it does not follow that every legislative classification concerning pregnancy is a sex based classification. . .'

'. . . Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

The lack of identity between the excluded disability and gender as such under this insurance program, becomes clear upon the most cursory analysis. The program divides potential recipients into two groups - pregnant women and non-pregnant persons. While the first group is exclusively female, the second includes members of both sexes.'

As in both cases, the promulgating authority for this regulation simply excluded one disability, pregnancy, from those permitting sick leave. Another example which is obviously excluded from the regulation is cosmetic surgery experienced by either men or women. As indicated from the foregoing quotation, Mrs. Rutledge was not placed into a group of women, but rather a group identified as pregnant women as opposed to non-pregnant persons.

"The Court finds no prohibited discrimination in this case, and will therefore enter judgment in favor of the Plaintiffs for the costs of the action."

In addition to the facts set forth in the trial court's memorandum it appears that Mrs. Rutledge submitted her resignation for personal reasons to the Sedgwick County Social Welfare Board (Board) effective November 30, 1972. Her husband, also an employee of the Board, submitted his resignation at the same time so that he could move to California to seek employment. Previously, on November 3, 1972, Mrs. Rutledge had filed a complaint with the KCCR based upon the denial of sick leave for pregnancy purposes. The actions complained of occurred prior to the birth of the child on August 28, 1972. At the time that Mrs. Rutledge took leave to have her baby she had accumulated only two days of sick leave and six days of annual leave. After her resignation on

November 30, 1972, Mrs. Rutledge accompanied her husband to California and following a stay of approximately four months, she returned to Wichita and on April 1, 1973, resumed employment with the Board. The complaint filed with KCCR was not heard until February, 1976, and resulted in an award of $3,591.78 for back wages during the period she was in California and $1,000.00 for pain, suffering and humiliation. The action filed by the appellees was in the nature of an appeal from the order of the KCCR pursuant to K.S.A. 44-1011 and was heard by trial de novo in the district court.

Appellant's main contention is that the exclusion of pregnancy from the sick leave plan of the Board and the denial of sick leave for pregnancy related illness constitute an illegal discrimination on the basis of sex in violation of the Kansas Acts Against Discrimination, K.S.A. 44-1001 *et seq.* A large portion of the briefs of both parties is devoted to federal court decisions concerning Title VII of the Federal Civil Rights Act of 1964, which are not controlling in this court. *Brookover Feed Yards, Inc. v. Carlton, Commissioner,* 213 Kan. 684, 689, 518 P.2d 470 (1974).

November 16, 1972, K.A.R. 21-32-6 was adopted as a temporary rule and regulation and became permanent on May 1, 1975. K.A.R. 21-32-6 provides in part:

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom, are for all job related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment."

Appellant urges that the adoption of K.A.R. 21-32-6 merely sets forth the legislative intent that already existed under K.S.A. 44-1009(*a*)(1) and that a violation of the provisions of the regulation must have constituted a violation of the statute even though such conduct took place prior to the time the regulation was adopted. We do not agree. The regulation does not have retroactive application. Regulations in effect in August, 1972, specifically excluded pregnancy related illnesses from sick leave benefits. The Kansas Administrative Regulations when adopted have the force and effect of a statute (K.S.A. 77-425) and as in the case of statutes will be construed to operate prospectively unless a contrary intent is clearly indicated. *Eakes v. Hoffman-LeRoche, Inc.,* 220 Kan. 565, 552 P.2d 998 (1976). See also 73 C.J.S., Public Administrative Bodies and Procedure § 107. In the instant case

we do not find any clear intent that an employer should be found to have violated a regulation that was not even in existence at the time the alleged discriminatory acts took place.

Appellees rely heavily on two United States Supreme Court cases which the trial court also found to be persuasive. Under similar circumstances it was held in *Geduldig v. Aiello,* 417 U.S. 484, 41 L.Ed.2d 256, 94 S.Ct. 2485 (1974), that the exclusion of pregnancy benefits from an employer's disability insurance system was not a violation of the equal protection clause of the Fourteenth Amendment. *General Electric Co. v. Gilbert,* 429 U.S. 125, 50 L.Ed.2d 343, 97 S.Ct. 401 (1976), *rehearing denied* 429 U.S. 1079 (1977) held the denial of disability benefits for pregnancy related illness did not violate § 703(a)(1) of Title VII of the Civil Rights Act of 1964 [42 U.S.C.S. § 2000e-2(a)(1)] and did not constitute illegal discrimination based on sex. The relevant portion of Title VII under consideration by the Court was comparable to K.S.A. 44-1009. We find no merit in appellant's first point.

Appellant next contends that her termination on November 30, 1972, was not voluntary but to the contrary constituted a constructive termination by the employer due to its discriminatory practices. This alleged discrimination consisted of the failure to grant two days sick leave during her pregnancy in August, 1972, forcing her to use her six days of accumulated annual leave, which ultimately, in some fashion, forced her to resign. The trial court found no factual basis for plaintiff's position and, in fact, found she resigned of her own personal choice. The findings of the trial court on all points are amply supported by the evidence.

We have considered all issues raised by appellant and find no error.

The judgment is affirmed.

HERD, J., not participating.