(615 P.2d 780)
No. 51,497

ROXANNE MCCABE, *Appellant,* v. JOHNSON COUNTY, KANSAS, BOARD OF COUNTY COMMISSIONERS, *Appellee.*

Opinion filed July 25, 1980.

*Reid Stacey,* assistant attorney general, and *Robert T. Stephan,* attorney general, for appellant.

*James W. Bouska,* assistant county counselor, and *Lyndus A. Henry,* county counselor, for appellee.

Before MEYER, P.J., REES and PARKS, JJ.

REES, J.: This is a civil rights case. Roxanne McCabe appeals from a judgment of the district court which set aside an order of the Kansas Commission on Civil Rights (KCCR) and dismissed her complaint against the Johnson County Board of County Commissioners (Board). We reverse.

In 1973, McCabe was hired as Johnson County Manpower Director at a salary of $696 per month. Her duties were to

administer programs under the federal Economic Opportunity Act, Emergency Employment Act, and later, the Comprehensive Employment and Training Act. Although these programs were federally funded, they were sponsored by the County, which hired personnel and set salaries. McCabe's salary was soon raised to $865 per month. In a budget request prepared by McCabe and submitted to the Board in July, 1974, her salary was set at $963 per month. Effective August 5, 1974, the Board increased her salary to that level.

Notwithstanding these increases, McCabe felt her salary was disproportionately low compared to other department heads. She felt this was primarily because she was female. In early October, 1974, McCabe asked the Board to reexamine her salary and that of three other manpower program administrators working under her. The Board agreed and asked the personnel director to conduct a study. At a meeting on October 10, 1974, the personnel director reported that although her study had been limited, the present salaries for the manpower program were apparently within an acceptable range and recommended no change until a more comprehensive study could be conducted. There is evidence that McCabe responded with threats of resignation by herself and the administrative staff of the manpower program. There is evidence that the Board, in turn, instructed her personnel were not to be hired or fired until further notice.

That same afternoon, McCabe telephoned the Director of the KCCR; she indicated to him she wished to file a complaint against the Board on the ground of sexual discrimination in compensation. The Director informed her he would have an intake worker contact her to obtain details of the complaint. McCabe or some unidentified person apparently called a reporter for the Kansas City Star and informed him of her action. The reporter called at least two of the county commissioners seeking comment on reports that a complaint had been filed with the KCCR. The commissioners requested the county counselor to determine the validity of the reports. He contacted the KCCR which reported no formal complaint on file. This was communicated to the Board.

On the morning of October 11, 1974, one of the administrators resigned after firing a "counselor's aide." There is also evidence that rumors were circulating of disenchantment throughout the manpower department and that McCabe would air the problems

directly to the press. A meeting was arranged between the Board and McCabe. Commissioner Franke testified that at the meeting the Board was concerned with the firing of an employee contrary to its instructions, the talk of "massive walkouts" by the remaining staff, and the need to "stabilize the situation" in the interest of the program's clients. McCabe testified only that the meeting included a discussion "of my action of having filed a complaint [with the KCCR]."

At the conclusion of the meeting, the Board removed McCabe as director of the manpower department and reassigned her to work with the personnel director. The Board then went to the manpower office with McCabe and informed the staff of its decision. McCabe and Sandra Adams, an administrative officer, testified Commissioner Davis told the staff that McCabe was removed because she had "filed" a complaint with the KCCR. Commissioner Davis denied this and further denied the complaint had been a consideration in the Board's decision to remove McCabe. He testified the Board was aware of threats of a complaint but had determined through the county counselor that none had been filed. Commissioner Franke testified to the same effect. On October 23, 1974, the Board voted to terminate McCabe from all duties effective October 31, 1974.

On January 23, 1975, McCabe filed a formal complaint with the KCCR charging discrimination in compensation and retaliation by demotion and discharge for her activities in opposing what she considered sex discrimination. On January 6, 1976, the KCCR investigating commissioner found no probable cause as to the charge of discrimination in compensation, but found that there *was* probable cause for the charge of retaliation. The matter was thereafter submitted to a hearing examiner. On July 16, 1977, the KCCR approved the hearing examiner's findings that McCabe had established retaliation in violation of the Act and awarded her $14,334 in back wages and $5,000 for pain, suffering and humiliation. After appealing to the district court, the Board filed a motion to dismiss McCabe's complaint. The court sustained the motion after reviewing the record before the KCCR, therefore treating the motion as one for summary judgment. See K.S.A. 60-212(b).

On appeal, various procedural matters have been raised which have not been demonstrated to us to involve actual, material

prejudice to the rights of either party and we therefore decline to address them. The essence of this case, and the basis of the trial court's decision, is the interpretation to be given K.S.A. 1979 Supp. 44-1009(*a*)(4) which provides that it is an unlawful employment practice:

"(4) For any employer, employment agency or labor organization to discharge, expel or otherwise discriminate against any person *because he has opposed any practices or acts forbidden under this act* or because he has filed a complaint, testified, or assisted in any proceeding under this act." (Emphasis added.)

A reading of this statute shows that it protects an employee against retaliation for two types of activities: (1) *opposition* to practices forbidden by the act, and (2) *participation* in formal proceedings under the act. We are here concerned only with the "opposition" clause.[1] In dismissing McCabe's complaint, the trial court agreed with the Board that to be protected, "opposition" must be directed to acts or practices which are *in fact* discriminatory and since the KCCR found no probable cause as to McCabe's allegations of sexual discrimination in compensation, she was not protected *even if* the Board's demotion and discharge of her constituted retaliation for "opposition" activities. McCabe argues, and the KCCR found, that the statute should be interpreted to protect "opposition" to practices the employee reasonably and in good faith believes to be discriminatory, even though that belief is subsequently found to be incorrect.

K.S.A. 1979 Supp. 44-1009(*a*)(4) is virtually identical to § 704(a) of Title VII of the Federal Civil Rights Act (42 USC § 2000e-3[a]). Federal court decisions under that act, although not controlling, are of persuasive precedential value. *Harder v. Kansas Comm'n on Civil Rights,* 225 Kan. 556, 592 P.2d 456 (1979).

Under the federal act it has consistently been held that the "participation" clause protects an employee against retaliation for charges of discrimination made by means of formal proceedings even though the charges are subsequently found to be without merit. This is in order to protect access to the Equal Employment Opportunity Commission (EEOC) and the employee's statutory right to file charges. See *e.g., Pettway v. Amer-*

[1] The "participation" clause is not discussed by the parties. Formal proceedings were not instituted until *after* McCabe was demoted and discharged. Because of the manner in which we dispose of the case, and because it was not raised, we do not decide whether McCabe's informal contact with the KCCR prior to her demotion and discharge constituted "participation."

*ican Cast Iron Pipe Company,* 411 F.2d 998 (5th Cir. 1969). A minor conflict has developed, however, in regard to the "opposition" clause.

The Board relies primarily on *Equal Employment Op. Com'n v. C & D Sportswear Corp.,* 398 F. Supp. 300 (M. D. Ga. 1975). In that case, the employee was suspended for fighting. In a conversation with a supervisor concerning the suspension, she accused the owner of the business of being a racist. She was discharged for this accusation. Thereafter she filed charges with the EEOC which found no merit to the charge of racism but found her informal accusation to the supervisor was protected by the "opposition" clause and therefore her discharge was prohibited retaliation. The federal district court found otherwise. It held that although meritless accusations of discrimination made in formal proceedings are protected under the "participation" clause, the "opposition" clause is not as broad in its protection of meritless *informal* accusations.

"[W]here accusations are made outside the procedures set forth by Congress that accusation is made at the accuser's peril. In order to be protected, it must be established that the accusation is well-founded. If it is, there is, in fact, an unlawful employment practice and he has the right, protected by Section 704(a), to oppose it. However, where there is no underlying unlawful employment practice the employee has no right to make that accusation in derogation of the procedures provided by statute." 398 F. Supp. at 306.

See also *Kinard v. National Supermarkets, Inc.,* 458 F. Supp. 106 (S. D. Ala. 1978). In dismissing the action, the trial court in the present case adopted this interpretation of the "opposition" clause under our statute.

A contrary interpretation of the federal act apparently was first advanced in *Hearth v. Metropolitan Transit Commission,* 436 F. Supp. 685 (D. Minn. 1977). There, suspension of female employees arose out of resistance to dress and grooming codes they alleged were sexually discriminatory. Since no formal proceedings had been initiated against the codes prior to the suspension, a retaliation charge could not be made under the "participation" clause. The court held, however, that even though the discrimination charge was groundless, a retaliation charge was viable under the "opposition" clause.

"[A]s long as the employee had a reasonable belief that what was being opposed constituted discrimination under Title VII, the claim of retaliation does not hinge upon a showing that the employer was in fact in violation of Title VII.

. . . .

"[T]his Court believes that appropriate informal opposition to perceived discrimination must not be chilled by the fear of retaliatory action in the event the alleged wrongdoing does not exist. It should not be necessary for an employee to resort immediately to the EEOC or similar State agencies in order to bring complaints of discrimination to the attention of the employer with some measure of protection. The resolution of such charges without governmental prodding should be encouraged." pp. 688-89.

This view of the "opposition" clause has now been adopted by three Federal Courts of Appeal. See *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041 (7th Cir. 1980); *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978); *Novotny v. Great Am. Federal Sav. & L. Ass'n*, 584 F.2d 1235 (3rd Cir. 1978), *vacated on other grounds* 442 U.S. 366, 60 L.Ed.2d 957, 99 S.Ct. 2345 (1979). See also 3 or A. Larson, Employment Discrimination § 87.40 (1979).

We find the reasoning of the *Hearth* line of cases convincing and hold that K.S.A. 1979 Supp. 44-1009(a)(4) protects an employee against retaliation for "opposition" exercised outside and apart from formal proceedings if the employee has a good faith, reasonable belief that the practices opposed are discriminatory, although it is subsequently determined they are not. This rule, of course, requires qualification to the extent that the employee's actions must not exceed protected "opposition." We need not now define that line.

A leading federal case on the qualification of the rule is *Hochstadt v. Worcester Foundation, Etc.*, 545 F.2d 222 (1st Cir. 1976). In that case, a female research scientist claimed her discharge violated the "opposition" clause of the federal act because it constituted retaliation for her acts in opposition to discriminatory practices of her employer, a biomedical research foundation. Dr. Hochstadt was hired at a salary lower than that of male research scientists. Although her salary was soon raised, she filed complaints with federal and state agencies. These complaints were eventually settled in her favor. Subsequent to the settlement of these complaints, however, Dr. Hochstadt was discharged. The evidence indicated that while the complaints were pending and after their settlement she disrupted foundation policy meetings with expressions of personal grievance and complaints concerning affirmative action; circulated rumors that the foundation would lose its federal funding; covertly compiled salary information concerning foundation employees and passed the infor-

mation to the press; used foundation resources, including $900 in telephone calls, to further her complaints; and prepared a deficient grant application. Fellow employees asked the foundation administration to seek her resignation. The question before the court was whether her discharge constituted retaliation for protected "opposition." The court held it did not.

"[W]here an employee is discharged for aggressive and allegedly disruptive activities associated with her complaints of discrimination, it is plainly a delicate matter to separate out the protected from the nonprotected conduct.

. . . .

". . . In such instances, we think courts have in each case to balance the purpose of the Act to protect persons engaging reasonably in activities opposing sexual discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel. Allowing an employee to invoke the protection of section 704(a) for conduct aimed at achieving purely ulterior objectives, or for conduct aimed at achieving even proper objectives through the use of improper means, could have an effect directly contrary to Congress' goal, by discouraging employers from hiring persons whom the Act is designed to protect. The standard can be little more definitive than the rule of reason applied by a judge or other tribunal to given facts. The requirements of the job and the tolerable limits of conduct in a particular setting must be explored. The present case, therefore, raises the question, put simply, of whether plaintiff went 'too far' in her particular employment setting." pp. 229-31.

The court held that Dr. Hochstadt's activities exceeded the protection of the act. See also *Monteiro v. Poole Silver Co.,* 615 F.2d 4 (1st Cir. 1980).

In the present case, the trial court granted the Board's motion to dismiss after reviewing the record before the KCCR and finding that under its interpretation of K.S.A. 1979 Supp. 44-1009(a)(4), "the uncontested facts" did not establish an act of retaliation. Not only did the trial court err in its narrow interpretation of K.S.A. 1979 Supp. 44-1009(a)(4), but in addition, application of our now stated interpretation of the statute would not entitle the Board to summary judgment.

The general rules governing summary judgment were recently stated in *Dugan v. First Nat'l Bank in Wichita,* 227 Kan. 201, 206, 606 P.2d 1009 (1980):

"Summary judgment is proper only if there are no genuine issues as to any material fact. The trial court, in ruling upon motions for summary judgment, may not determine factual issues; instead, the trial court should search the record to determine whether issues of material fact do exist. Pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. If there is a reasonable doubt as to the existence of issues of

fact, a motion for summary judgment should not be sustained. And finally, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment."

We have found the absence of probable cause to support McCabe's allegation of sexual discrimination in compensation does not control disposition of the retaliation charge against the Board. As we view the record, consisting at this point only of depositions before the KCCR, genuine issues of material fact regarding retaliation exist. As the Tenth Circuit has stated in a similar context:

"[T]he question of retaliation is particularly inappropriate for summary judgment disposition, since the primary issue is one of intent and motive." *Romero v. Union Pac. RR.*, 615 F.2d 1303, 1309 (10th Cir. 1980).

On remand for trial de novo, at which new evidence may be presented, *Stephens v. Unified School District*, 218 Kan. 220, 546 P.2d 197 (1975), the burden will be on McCabe to establish a prima facie case of retaliation. It will then be open to the Board to establish that its reason for demotion and discharge of McCabe was not in fact retaliation, that McCabe did not have a good faith, reasonable belief that there was sexual discrimination in compensation, or that McCabe's activities exceeded the bounds of protected "opposition." Although the present record evidence is strong in the last regard, we agree with the Third Circuit that:

"Clearly, illegal actions would be grounds for discharge, as would activities that unreasonably interfere with the employer's legitimate interests. . . . But such matters are issues for defense, and it is inappropriate to resolve them on a motion to dismiss." *Novotny v. Great Am. Federal Sav. & L. Ass'n,* 584 F.2d at 1261.

We determine only that the court erred in its interpretation of the "opposition" clause of K.S.A. 1979 Supp. 44-1009($a$)(4) and in granting summary judgment.

Reversed and remanded.