No. 55,413

No. 55,414

IN THE INTEREST OF ANNA SAWYER

IN THE INTEREST OF MATTHEW SAWYER

(672 P.2d 1093)

Opinion filed December 2, 1983.

*Christopher C. Iliff,* of Blackwell, Sanders, Matheny, Weary & Lombardi, of Kansas City, Missouri, argued the cause, and *Alan P. Blinzler,* of the same firm in Olathe, Kansas, was with him on the brief for the appellants Anna and Matthew Sawyer. *Austin K. Vincent,* of Russell, Johnson & Johnson, of Topeka, appeared as Kansas counsel before the court.

*Susan Kulp Stolle,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with her on the brief for the appellee State of Kansas.

The opinion of the court was delivered by

HERD, J.: This is an appeal from the trial court's decision that Anna and Matthew Sawyer are "children in need of care" because they were not attending school as required by K.S.A. 72-1111. The two juvenile cases are consolidated on appeal.

During the 1981-82 academic school year, Anna and Matthew Sawyer were regularly enrolled in the Spring Hill Elementary School, U.S.D. # 230, located in Spring Hill, Johnson County, Kansas. Anna's and Matthew's parents, Tom and Bonnie Sawyer,

are residents of Spring Hill. Anna is eight years old and Matthew is eleven.

The Sawyers became dissatisfied with the children's progress in Spring Hill. They organized their own private school, incorporating under the name of Longview School, Inc., and enrolled their children there. Longview School, Inc., is located within their home. It commenced operation the beginning of the 1982-83 academic school year. From that time until the trial court's order in January 1983, Anna and Matthew attended classes there on a daily basis.

The Longview School is not accredited nor has it been approved by any governing body of the State of Kansas. It is, however, registered as a private elementary school with the Kansas State Board of Education, pursuant to K.S.A. 1982 Supp. 72-53,101. No schedule as to the timing of classroom activity exists. Anna and Matthew's siblings, ages four and twenty-two months, are in the home during the instruction. Mrs. Sawyer is the sole babysitter for all four children during the day. Also, Mrs. Sawyer is the only teacher at the Longview School. Matthew and Anna are the only students enrolled at Longview School. The courses taught include reading, writing, arithmetic, geography, spelling, English grammar and composition, history of the United States and of the State of Kansas, civil government and the duties of citizenship, health and hygiene, and patriotism and the duties of a citizen suitable to the elementary grades.

Mrs. Sawyer does not have a college degree nor a teaching certificate; nor does she have teaching experience. She has one and one-half years of college education. She graduated from high school with a 3.5 grade point average on a 4.0 scale.

The Sawyers decided to have their school-age children remain at home for instruction because of dissatisfaction with Matthew's progress in Spring Hill Elementary School. Matthew had completed his second grade school year in Tennessee, where the school district refused to advance him to the third grade. The Sawyer family moved to Spring Hill, Kansas, for the 1979-80 school year and Matthew enrolled as a second grade student. The principal of Spring Hill Elementary School, William Pierce, testified that while Matthew Sawyer was attending Spring Hill Elementary between 1979 and 1982, his composite percentile on the standardized learning achievement test administered by the school had dropped from the 45th percentile to the 16th per-

centile. There was no evidence of the children's scores after the home education experience.

The only witness called for the State besides Mrs. Sawyer was Dr. Bruce Bean, a psychologist. Dr. Bean admitted he had no acquaintance with private schools conducted in the home and that he had never read any literature on the topic of home schools. Dr. Bean gave no testimony about the competence of Mrs. Sawyer to teach her children, nor did he offer any evidence regarding the subject matter of the courses taught; rather, he limited his assessment to the psychological functioning of the two children.

Dr. Bean's evaluation consisted of various psychological tests and sessions with the Sawyer family. While Dr. Bean testified Anna was quite mature and able to handle the home education experience, he felt Matthew would benefit more from a highly structured educational experience not offered in Longview School.

Dr. Raymond Moore, appellants' expert witness, testified Bonnie Sawyer and the school which she conducted are particularly situated to offer a competent education to the Sawyer children. Dr. Moore is a developmental psychologist and has authored several books and articles on the topic of child education in the home. He met the Sawyer family the day before the hearings. Dr. Moore agreed with Dr. Bean that Anna was coping well with the home instruction; however, he disagreed with Dr. Bean's assessment of Matthew's needs. Dr. Moore testified he felt Matt needed the extra attention and support he received from the home instruction in order to overcome his poor school performance and to mature.

After this testimony, the trial court found Anna and Matthew Sawyer to be "children in need of care" and ordered them back to their former school. From this order the children appeal.

Appellants initially argue the State failed to prove by clear and convincing evidence that Anna and Matthew Sawyer are children in need of care.

The Kansas Code for Care of Children defines a child in need of care as one who is less than eighteen years of age and "is not attending school as required by K.S.A. 72-1111." K.S.A. 1982 Supp. 38-1502(a)(6). A nonpublic school is defined by K.S.A. 72-1111(a)(2) as:

"[A] private, denominational or parochial school taught by a competent instructor for a period of time which is substantially equivalent to the period of time public school is maintained in the school district in which the private, denominational or parochial school is located."

Kansas statutes require the State to prove by clear and convincing evidence that a child is in need of care. K.S.A. 1982 Supp. 38-1555. While this is the burden of proof at trial, "the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings . . . . [T]he reviewing court must examine the evidence in the light most favorable to the party prevailing below." *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, 464, 639 P.2d 29 (1982). The issue then, is whether the trial court had before it substantial competent evidence Anna and Matthew Sawyer were not attending school as defined by K.S.A. 72-1111.

At trial it was shown Longview School is a home study school with only two students—the Sawyer children. It is nonaccredited. Though the courses offered were the statutory courses, the teaching schedule varied from day to day. School usually lasted only half a day. Sometimes classes commenced at 8:00 a.m., sometimes at 9:30 a.m., depending on demands of housework and the two smaller children who sat in on the classes. The two students, though three years different in age, were in the same class which caused some sibling rivalry to the detriment of Matthew. The school has no access to a counselor, psychiatrist or special education instructor. The evidence also revealed a very minimum of lesson planning.

Mrs. Sawyer testified she felt she was a competent and qualified teacher for her children. Dr. Bean expressed his opinion that regardless of Mrs. Sawyer's competency a school with more children would be generally better for any child since it would provide more social interaction outside of the home. He summarized his evaluation as follows:

"Had Mr. and Mrs. Sawyer consulted me regarding their concerns about Matt and his difficulties at school, based on the results of my evaluation, I would have recommended the development of a close, cooperative working arrangement between the Sawyers and the [public] school. It seems that it would be beneficial for the school to provide a detailed diagnostic educational evaluation for Matt to help more clearly pinpoint his educational strengths and weaknesses. Based on this evaluation, a definite educational plan could have been developed either in

the regular classroom or, depending on the results of the evaluation, an individual educational plan could be developed through the special education department. In addition to this, I would have recommended a brief course of family therapy to help coordinate home and school communication and to help the family more fully recognize some of Matt's underlying feelings and develop some family interaction patterns to address his difficulties. The present evaluation indicates that there may be some rather notable difficulties presented for the Sawyer family and most especially for Matt as a result of the decision to establish an inhome schooling program for Matt and Anna."

Dr. Raymond Moore, a developmental psychologist from Michigan, has authored several books and articles on the subject of educating children in the home. He has become an outspoken advocate of home school. Dr. Moore testified Mrs. Sawyer was particularly competent to teach her children because of her close relationship and ability to provide a loving environment and consistent discipline. His criteria would apply to most mothers, regardless of their education or training.

The legislative history of home schools in Kansas is scarce. Home instruction was at one time recognized as a valid exception to the compulsory school attendance laws. See G.S. 1909, § 7736 *et seq.*

In 1968, the legislature amended K.S.A. 72-1103, which establishes the required courses of instruction, to include only accredited schools. Kansas statutes do not require nonpublic schools to be accredited, nor does it require teachers in nonpublic schools to be certified. In 1979, two bills concerning this issue were proposed in the legislature: H.B. 2056 sought to require children of compulsory school attendance age to attend only accredited schools; H.B. 2057 wanted to require all teachers of K.S.A. 72-1111 schools to be certified. Both bills died in committee.

Only three cases on home schools have reached this court. In 1916 we decided the case of *State v. Will,* 99 Kan. 167, 160 Pac. 1025 (1916). In *Will* the court held the legislature's elimination of the home study exception in the truancy laws and replacement of an exception for private, denominational or parochial schools taught by a competent instructor was not an effort to eliminate home schools but rather to increase the quality of all nonpublic schools.

"The legislature may well have believed that if such [nonpublic] schools were taught by a competent instructor the sufficiency and scope of the course of study

would necessarily follow to fully qualify the child for his future duties as a citizen." 99 Kan. at 170.

The *Will* court further held:

"Since the legislature has refrained from exercising control over the courses of study in these private, denominational or parochial schools further than to require them to be taught by competent instructors, it is too much to ask the state's prosecuting officers or its courts to meddle with them." 99 Kan. at 171.

In response to this the 1919 Kansas legislature passed a law establishing minimum course requirements for all schools, whether public, private, denominational or parochial.

This court did not again consider the issue of home instruction until 1963 in *State v. Lowry*, 191 Kan. 701, 383 P.2d 962 (1963). In *Lowry* the court found Mrs. Lowry, the teacher for her children in her home, was competent within the meaning of the statute. Mrs. Lowry held a Kansas teaching certificate and had been a teacher in Kansas public schools. The court held, however, that she did not conduct a private school since the school did not follow the minimum curriculum requirements provided by statute. As previously noted, this requirement was eliminated for nonpublic schools in 1968.

The *Lowry* court additionally stated:

"In the instant case the defendants' attempt to operate a private school resulted in mere scheduled home instruction, which is no longer an excuse for nonattendance in the schools of the types prescribed in the act." 191 Kan. at 704.

The most recent case decided by this court on the issue was, *State v. Garber*, 197 Kan. 567, 419 P.2d 896 (1966), *cert. denied* 389 U.S. 51 (1967). In *Garber*, this court held a student enrolled in a correspondence course which held class one morning a week with in-home vocational training the remainder of the week, was not attending a school within the meaning of the truancy statute. The court held the programs which are "essentially home instruction systems" are not private, denominational or parochial schools. See 197 Kan. at 571.

The appellants point the court to the recent case *In the Interest of Zephyrus White*, 82-J-08 (district court of Cloud County, Kansas, July 2, 1982). In that case Judge Marvin L. Stortz determined that a school taught by a noncollege graduate mother where the only student was her seven-year-old son, was a private school within the meaning of K.S.A. 72-1111. The appellants argue this case is indicative of a changing feeling among the

courts since the early 1960's towards home instruction. *White* is a district court decision and as such is not precedent.

At issue is whether there is substantial competent evidence to support the trial court's finding the home instruction by Mrs. Sawyer is not a school within the meaning of K.S.A. 72-1111. Viewing the State's evidence and the testimony of Bonnie Sawyer and Dr. Bean in the light most favorable to the State, as we must in these cases, we have no hesitation in concluding the evidence supports the trial court's finding. Longview School, Inc., is the Sawyer home. It is unaccredited. The only students are Matthew and Anna Sawyer. Bonnie Sawyer is the teacher. She is uncertified with no teaching experience. She combines the babysitting of two smaller children with her attempt to teach Matthew and Anna. There is no testing, planning or scheduling. The only goal of the arrangement is to extricate Matthew from his failure in public school. Anna is a pawn in the struggle. This will not suffice. We find the Sawyers' plan, though well intentioned, a thinly veiled subterfuge attacking compulsory school attendance. If such a family arrangement will serve as a substitute for school, there is no compulsory school attendance. Clearly the legislature intends to maintain compulsory education. We find appellants' argument is without merit.

The appellants next argue parents have a fundamental right to educate their children in the manner they deem most appropriate regardless of state law. The United States Supreme Court has held education is not a fundamental right, but rather is to be regarded and reviewed as any social and economic legislation. See *San Antonio School District v. Rodriguez*, 411 U.S. 1, 36 L.Ed.2d 16, 93 S.Ct. 1278 (1973). The standard of review to be applied then, is whether the state's system has some rational relationship to a legitimate state purpose. 411 U.S. at 40. The Kansas system of compulsory school attendance embodied at K.S.A. 72-1111, which allows alternatives to public school, has a rational relationship to the legitimate State purpose of educating its children. This issue is without merit.

The judgment of the trial court is affirmed.