No. 55,294

CYNTHIA S. REBER, *Appellant,* v. MEL FALLEY, INC. d/b/a FALLEY'S
MARKET NO. 3, *Appellee.*

(683 P.2d 1229)

Opinion filed
June 8, 1984.

*Roger W. Lovett,* Chief Counsel of the Kansas Commission on Civil Rights,
argued the cause, and *Arthur W. Solis,* of the Commission, was on the briefs for
appellant.

*Eric W. Severson,* of Irwin, Clutter & Severson, of Topeka, argued the cause
and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an action for sex discrimination in employ-
ment brought by Cynthia S. Reber, a former employee, against
Mel Falley, Inc. d/b/a Falley's Market No. 3 (Falley's). Plaintiff
was discharged by the defendant on July 11, 1980. A month later
she commenced this proceeding before the Kansas Commission
on Civil Rights by filing a complaint charging that Falley's
discharged her because of her sex, in violation of K.S.A. 44-1009.

The Commission held in favor of plaintiff. After de novo review, the district court found in favor of Falley's. Plaintiff appeals. The sole issue presented in appellant's brief is stated as follows:

"Whether the district court failed to apply the correct legal standards to the evidence before it when it determined that Cynthia S. Reber failed to prove by a preponderance of the evidence that Mel Falley, Inc. d/b/a Falley's Market No. 3 unlawfully discriminated against her on the basis of her sex."

Before turning to the factual background of this claim, we will first discuss the applicable statute and the primary case construing employment discrimination law. The statute is K.S.A. 44-1009(a)(1), which provides in applicable part that:

"It shall be an unlawful employment practice . . . [f]or an employer, because of the . . . sex . . . of any person . . . to discharge from employment such person . . . ."

The legal rules applicable in an employment discrimination case such as this are fully discussed and set forth in *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 648 P.2d 234 (1982), upon which both parties rely. In that case, the trial judge held that once the employee had established a prima facie case of discrimination, the employer had to show by clear and convincing evidence that its actions were justified or nondiscriminatory. We held that the trial court erred in its ruling on the burden of proof. We said:

"Appellant claims it was error to require it to show by clear and convincing evidence its acts were justified or nondiscriminatory. It cites *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-56, 67 L.Ed.2d 207, 101 S.Ct. 1089 (1981), a case dealing with Title VII of the Federal Civil Rights Act, 42 U.S.C. 200e *et seq.* In the opinion Justice Powell wrote for a unanimous court:

" 'In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*, at 802. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*, at 804.

" 'The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. See *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, n. 2 (1978); *id.*, at 29 (Stevens, J., dissenting). . . .

" 'The burden of establishing a prima facie case of disparate treatment is not onerous. . . . The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. See *Teamsters v. United States*, 431 U.S. 324, 358, and n. 44 (1977). . . . Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

" 'The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See *Sweeney, supra*, at 25. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

" 'The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she had been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See *McDonnell Douglas*, 411 U.S. at 804-05.'

"We note the federal court was careful in *Burdine* to point out that the ultimate burden of persuading the trier of fact that the respondent intentionally discriminated against the complainant remains at all times with the complainant. The burden of proof never shifts to the respondent. It is the burden of going forward with the evidence that is placed on defendant after plaintiff has established a prima facie case.

"Federal court decisions concerning Title VII are not controlling on this court. *Harder v. Kansas Comm'n on Civil Rights*, 225 Kan. 556, 559, 592 P.2d 456 (1979). They are persuasive authority, however. *McCabe v. Board of Johnson County Comm'rs*, 5 Kan. App. 2d 232, 235, 615 P.2d 780 (1980). Especially is this true when they concern general law in the field of civil rights. We accept and embrace the rules stated in *Burdine* as to burden of proof, prima facie case and burden of going forward with the evidence in discrimination cases.

"The burden of proof in a proceeding under the Kansas Act Against Discrim-

ination, K.S.A. 44-1001 *et seq.*, is on the complainant to prove by a preponderance of the evidence that the respondent is guilty of a discriminatory practice. Initially, the complainant must present a prima facie case of discrimination. Then the burden of going forward with the evidence shifts to respondent and this burden may be discharged by evidence of a legitimate, nondiscriminatory reason for respondent's conduct. Once the respondent discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by respondent were merely a pretext for discrimination.

"The record discloses the complainant's evidence was determined by the trier of fact to establish a prima facie case of discrimination. At that point in the proceeding the burden of going forward with the evidence shifted to the respondent to introduce evidence of some legitimate, nondiscriminatory reason for respondent's conduct. We do not reach the question of whether respondent met this burden. To give evidence of some legitimate, nondiscriminatory reason for conduct does not require proof by clear and convincing evidence. The trier of fact erred in imposing such a burden of proof on the respondent." 231 Kan. at 766-68.

In the case now before us, the trial court in a well-written memorandum decision and order found that the plaintiff had made out a prima facie case of discrimination. We agree. The plaintiff's evidence established that she, a woman, was fired because of her relationship with a male employee, and that he was not so disciplined.

Mrs. Reber first came to work for Falley's on March 7, 1979, as a checker. At first she worked part-time, but soon began working full-time. Her duties included checking groceries for customers and also ordering and stocking cigarettes, candy and tobacco. As time passed, a relationship developed between Mrs. Reber and Clyde Ghan, the general manager of the market. According to Mrs. Reber, he was only "a good friend." She testified that other employees became jealous of the relationship and "vicious" rumors began. Plaintiff testified that Mr. Falley told her that he was letting her go "because of this thing between me and Clyde"—that she was "having an affair," and for that reason was being terminated. Her personnel card showed reason for termination: "Personal—See Mike [Falley]." Mel Falley wrote a letter of recommendation for Mrs. Reber dated July 11, 1980. Among other things, it states:

"Cyndee [Mrs. Reber] gets along fine with the public as well as her fellow employees. She is honest and does her work well. I would recommend her highly."

Falley's evidence indicated that as the relationship between

Mrs. Reber and Clyde Ghan progressed, Mrs. Reber's lunch breaks became lengthy. She would take extended work breaks when she was away from her checkstand. These greatly exceeded the usual or customary fifteen-minute breaks. During those breaks she would visit with Mr. Ghan in the back room, where his desk was located. It was not necessary for her to do her ordering back there; she could list the items needed on a portable ten-key pad, a digital ordering machine, which could be used up front. Her extended absences from her checkstand caused complaints from other checkers and nonmanagerial employees, several of whom testified at the hearing. Ultimately, Mel Falley, Mike Falley, and the grocery manager, Gary Crawford, met and discussed the situation. They determined that Mrs. Reber was not getting along well with the other employees, that she was not doing her job as well as she had in the past, and that she should be terminated. On July 11, 1980, Mel Falley met with Mrs. Reber and told her that she was fired. He told her that she was being terminated because of her relationship with Clyde Ghan. He testified that the relationship affected Mrs. Reber's work, and that her absences from her ordinary work station caused a hardship on the other checkers.

Clyde Ghan, however, was not fired as a result of the relationship. Ghan had been with Falley's for twenty-three years, had come up through the ranks, and for some fourteen years had served as general manager of Falley's Market No. 3. He was in charge of overseeing all store operations, purchasing, displays and supplies, accounting for sales proceeds during the day, and hiring and firing employees. During the time Mrs. Reber's job performance deteriorated, Mr. Ghan continued to do his job and perform his duties well. He was considered a valuable employee. Mr. Ghan was not discharged or reprimanded, but was later told that his job "was in jeopardy." He resigned from his employment with Falley's in January 1981, some six months after plaintiff was terminated.

The trial court, in its memorandum opinion, said in part:

"Once the prima facie case is shown it creates a rebuttable presumption of discrimination and therefore, if not rebutted requires a finding for the plaintiff. The nature of the burden of rebuttal is merely one of production, not proof. *Lee v. Russell County Board of Education,* 684 F.2d 769 ([11th Cir.] 1982). The defendant may discharge this burden by articulating a nondiscriminatory reason for plaintiff's dismissal. In *Woods [v. Midwest Conveyor Co.,* 231 Kan. 763, 648

P.2d 234 (1982)], the Kansas Supreme Court made it clear that the defendant need only prove the existence of a nondiscriminatory reason by a preponderance of the evidence and not by the more exacting standard of clear and convincing evidence. . . .

. . . .

"An adequate rebuttal of the complainant's prima facie case will not in itself automatically foreclose a finding of respondent's liability. *Ray v. Freeman,* 626 F.2d 439 (5th Cir. 1980) cert denied 450 U.S. 997. After respondent has met its burden of going forward with the evidence, the complainant must be given the opportunity to refute the proffered reasons for termination and to show that the reasons given were mere pretext for discriminatory conduct. The Complainant may meet this burden by showing the Court that a discriminatory reason more likely motivated the employer or by showing that the proffered reason is unworthy of credence. *Woods, supra* at 767.

"Falley's contends that Ms. Reber had the opportunity to demonstrate the reasons given for dismissal were pretexual but that she failed to do so because she did not offer any evidence to rebut the testimony that she was discourteous and unreliable. Falley's contention is based on its belief that Ms. Reber is required to produce additional evidence to counter the evidence offered to show non-discriminatory motive. Falley's position is without legal basis. When Falley's offered a valid business motive to rebut Ms. Reber's prima facie case, the presumption of discriminatory practice dropped out of the case. However, it is not necessary for Ms. Reber to introduce new evidence to counter the evidence offered by Falley's. The Court may properly consider the evidence introduced on the prima facie phase to determine whether Falley's explanations were valid or were mere pretexts for discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 67 L.Ed.2d 207, 101 S.Ct. 1089 (1981).

"After consideration of the record, the Court finds that the Appellee, Ms. Reber, has failed to demonstrate that the Appellant's proferred reasons were pretexual or to show that a discriminatory reason more likely motivated the Appellant's actions. There is no doubt that the relationship between Ms. Reber and Mr. Ghan played a role in Ms. Reber's dismissal from her job. However, Ms. Reber was not dismissed solely because of her relationship with Mr. Ghan, but was dismissed because the relationship had a detrimental and unacceptable effect on her job performance. Falley's decision was based on business considerations and not upon impermissible sexual bias. Mel Falley explained that Clyde Ghan was not discharged because he was a trusted employee of twenty-three (23) years and because Mr. Ghan's job performance was unaffected by his relationship with Ms. Reber. In effect, Falley's retained an employee who continued to perform his job adequately and discharged an employee who no longer met the requirements and expectations of the position."

Then, after considering other arguments, the trial court set aside the decision rendered by the K.C.C.R. and entered judgment for Falley's and against Cynthia S. Reber on her claims.

Plaintiff claims that the trial court did not properly understand and apply the doctrine of the *Woods* case. A careful reading of the trial court's memorandum opinion, however, refutes this

contention. *Woods* was carefully considered and properly applied by the court. Falley's, under *Woods*, was not required to establish that it acted upon some legitimate, nondiscriminatory reason by clear and convincing evidence. Its burden was merely to establish its case by a preponderance of the evidence. The trial court determined that it had done so. The trial court's finding is supported by competent, substantial evidence. This was primarily a fact case. The scope of review of an appellate court is to view the evidence in the light most favorable to the prevailing party and determine whether there is substantial competent evidence to support the trial court's finding. *In re Sawyer*, 234 Kan. 436, Syl. ¶ 1, 672 P.2d 1093 (1983). Viewing the evidence in this manner, we find no error.

Plaintiff also contends that the trial court imposed a higher standard of proof of causation for the firing upon the plaintiff than it did upon Falley's. We do not so read the record. The trial court properly found that plaintiff established a prima facie case. The court further found that she was not required to offer rebuttal evidence after the close of Falley's case, but that it could properly consider the evidence introduced on the prima facie phase of the case to determine whether Falley's explanations were valid or merely a pretext for discrimination. This is eminently correct; the trial court should base its decision upon all of the evidence, regardless of the stage of the proceedings at which it is offered. We find nothing to indicate that the trial court imposed a higher burden of proof upon plaintiff than upon defendant.

Plaintiff argues that the trial court applied a "sole motive" test and required plaintiff to show that her sex was the sole motive for her discharge. In support of this claim, plaintiff cites *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 49 L.Ed.2d 493, 96 S.Ct. 2574 (1976). That case is, however, distinguishable on the facts. Several employees had stolen cargo in transit; those of one race were fired, those of another were not. There was no showing, as here, that some employees neglected their work while others did not, that some were more valuable to the employer, or that there was *any* basis other than race for different treatment of the employees. The trial court here held that the fact that Mrs. Reber was suspected of "having an affair"—in itself not an activity protected by the Kansas Act Against Discrimination—

played a role in her dismissal from her job. That finding, however, is not a finding that she was fired because she is female. The trial court considered all of the evidence, and concluded that "Falley's decision was based on business considerations and not upon impermissible sexual bias." It thus found that the decision was not based upon gender; this finding is supported by substantial evidence in the record.

Finally, plaintiff suggests that this is a "mixed motive" case, citing *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 50 L.Ed.2d 471, 97 S.Ct. 568 (1977). In that case, a teacher was discharged for two reasons, one of which was protected by the First Amendment. We do not find that case persuasive here, since the trial court found that the plaintiff's discharge was based upon business considerations and not upon impermissible sexual bias.

The judgment is affirmed.

PRAGER, J., not participating.

HERD, J., dissenting: Cynthia S. Reber was discharged by Falley's because she was having an affair with Mr. Ghan, her supervisor. Falley's determined the relationship had a detrimental and unacceptable effect on her job performance. Mr. Ghan, who was a willing 50/50 partner in the affair, was not discharged. Ghan was not discharged because he was a trusted employee of twenty-three years and Falley's determined his job performance was unaffected by his relationship with Ms. Reber.

It is virtually uncontroverted that Reber and Ghan were having an affair. They enjoyed each other's company and spent considerable time together on the job. It goes without saying both employees were neglecting their work. The only difference was Reber left her duty station and went to Ghan's desk in the back room. Thus, Ghan did not have to abandon his station to enjoy Ms. Reber's company. He nevertheless was neglecting his duty. It is clear they both were guilty of the same infraction but were treated differently. Both should have been discharged, or both retained with a warning. The different treatment for the same conduct constitutes gender-based discrimination.

I would reverse the trial court.